# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF NORTH CAROLINA

# STATESVILLE DIVISION

| | |
|---|---|
| **ADRIANA MUJA,** ) | **Civil Action No.: 5:24-cv-221** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **COMPLAINT** |
| **SORRENTO, LLC d/b/a SORRENTO'S** ) | |
| **ITALIAN RESTAURANT & PIZZERIA,** ) | **(Jury Trial Demanded)** |
| **and ANTONIO MARI (Individually),** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff Adriana Muja, by and through undersigned counsel Ian M. McRary of McRary Law, PLLC, complains of above-captioned Defendants Sorrento, LLC, d/b/a Sorrento's Italian Restaurant & Pizzeria, in Statesville, North Carolina and its owner Defendant Antonio Mari (collectively, the "Defendants"), as follows:

## I. PARTIES

1.  Plaintiff Adriana Muja is an adult at least 18 years old, and a citizen and resident of Iredell County, North Carolina. At all times relevant, Plaintiff Muja was employed at-will as a manager by Defendant Sorrento's in Iredell County, North Carolina, where she worked and was supervised by Defendant Antonio Mari from about June 20, 2021 until her termination on or about December 18, 2023. Plaintiff Muja was, at all times relevant, employed by Defendant Sorrento, LLC, d/b/a Sorrento's Italian Restaurant & Pizzeria ("Sorrento's") within the meaning of applicable federal and state laws.

2.  Defendant Sorrento's is a private limited liability company incorporated in North Carolina with its principal place of business in Iredell County, North Carolina.  At all times relevant, Defendant Sorrento's was an employer, as defined by applicable federal and state laws, which employed 15 or more employees.

3.  Defendant Antonio Mari is an adult at least 18 years old and, upon information and belief, a citizen and resident of Iredell County, North Carolina.  At all times relevant, Defendant Mari was and is a co-owner of Defendant Sorrento's.  Defendant Mari was also, at all times relevant, Plaintiff Muja's supervisor.

4.  At all times relevant, Defendant Mari and Antonio P. Ladonea were and are the only co-owners of Defendant Sorrento's, and they exercised full and actual control over all aspects of its operations.

## II.  JURISDICTION AND VENUE

5.  This Complaint arises under, *inter alia*, 42 USC §§ 2000e - 2000e17 (Title VII of the Civil Rights Act of 1964, as amended), which prohibits discrimination on the basis of sex, including sexual harassment.  Accordingly, this Court has original subject matter jurisdiction pursuant to 28 USC § 1331 (relating to federal question jurisdiction) and 28 USC § 1333(a)(3) (relating to equal rights actions).

6.  To the extent that any claims set forth herein are not wholly within the subject matter jurisdiction of this Court pursuant to 42 USC §§ 2000e - 2000e17, this Court has supplemental jurisdiction over the remaining state court claims pursuant to 28 USC § 1367.

7.  Venue is proper in this District pursuant to 28 USC § 1391 inasmuch as Defendant is a corporation subject to personal jurisdiction in this District.  Further, the facts supporting the claims in this Complaint occurred in this District.

8.  Joinder of claims is permitted under Rule 18 of the Federal Rules of Civil Procedure ("FRCP").  Joinder of parties is appropriate under Rule 19 or 20 of the FRCP.

9.  All prerequisite conditions for jurisdiction under 42 USC §§ 2000e - 2000e17 and NCGS § 95-243 have been met, as further detailed in the facts section below.

### III.  FACTS

10. On or about June 20, 2021, Plaintiff Muja was hired by Defendant Sorrento's in Statesville, Iredell County, North Carolina where she was employed as a full-time manager at all times relevant to this Complaint.

11. Plaintiff Muja routinely worked in excess of 40 hours per week and was an exemplary employee for Defendants.

12. Within a couple months of being hired, Defendant Antonio Mari and Erik Chicas, a manager at Sorrento's, engaged in a relentless campaign of sexual harassment against Plaintiff Muja.

13. Defendant Mari and Erik Chicas made repeated degrading sexual comments directed at Plaintiff Muja.  Comments included, "Oh, you look so sexy in black and heels", "Oh my god, you look so sexy", "Just give me one B.J. (referring to a blow-job, or oral sex).  I will pay", and many other similarly-degrading sexual comments.

14. Defendant Mari and manager Erik Chicas routinely called Plaintiff Muja by derogatory sexual terms, such as "Bitch" and "Cunt."

15. On multiple occasions, Defendant Mari offered Plaintiff Muja money for sex.  At first, oral sex.  Later, sex.

16. Defendant Mari and Erik Chicas regularly discussed sexual topics (including sexual history), made sexually-charged statements, and asked probing sexual questions in the presence of, and involving, Plaintiff Muja.

17. Upon information and belief, Defendant Mari was, at all times relevant, married. Defendant Mari also knew that Plaintiff Muja was married.

18. Defendant Mari and manager Erik Chicas both repeatedly groped Plaintiff Muja in a sexual manner, including groping her breasts and her butt.

19. Chicas repeatedly groped Plaintiff Muja's vagina over her clothing, then smelled his fingers in front of other employees.

20. Defendant Mari and manager Erik Chicas knew about, encouraged and enabled each other's sexual harassment toward multiple female employees, including Plaintiff Muja. Defendant Mari and co-owner Antonio Ladonea knew about, but did nothing to stop, harassment.

21. Plaintiff Muja never consented to Defendant Mari or manager Erik Chicas' sexual harassment, nor did Plaintiff Muja say or do anything to imply consent. Plaintiff Muja expressed her disgust with their behavior on multiple occasions, and she never expressed approval or tolerance.

22. Plaintiff Muja clearly and directly informed Defendant Mari and manager Erik Chicas that their behavior was inappropriate and unwelcome, instructing them to stop.

23. On one occasion, in response to Defendant Mari offering Plaintiff Muja money for sex, Plaintiff Muja stated, "No, I am not a prostitute!"

24. Despite Plaintiff Muja's refusals and requests to stop, Defendant Mari and manager Erik Chicas continued their sexual harassment unabated.

25. Defendant Mari seemed to harbor resentment toward Plaintiff Muja for not acceding to Defendant Mari's sexual advances and requests for sexual favors.

26. When Plaintiff Muja mentioned Defendant Mari and manager Erik Chicas' sexual harassment to a co-worker, whose name will remain private in this Complaint for her protection, the co-worker informed Plaintiff Muja that Defendant Mari and manager Erik Chicas' sexual harassment was ubiquitous, negatively affecting multiple female employees of Defendant Sorrento's. Some learn to tolerate it; others cannot and quit.

27. Upon information and belief, Defendant Mari solicited sexual activity and sexual photos from multiple female employees of Defendant Sorrento's in exchange for money, gifts (including paying for female employees to get manicures and pedicures), and favoritism. The sex often occurred in the restaurant.

28. Upon information and belief, Defendant Mari has spent thousands of dollars on the solicitation activities described in the above paragraph.

29. Upon information and belief, Defendant Mari bought a female employee of Defendant Sorrento's named K.M. a Honda Accord Sport in exchange for sex. When K.M. informed Defendant Mari that she was no longer interested in having sex with him, Defendant Mari went "psycho" and threatened to terminate her unless she returned the car.

30. Upon information and belief, Defendant Mari offered an immigration work visa sponsored by Defendant Sorrento's to a female employee named E.V. if she had sex with him.

31. Defendant Mari offered Plaintiff Muja's sister, N.M., a place to live and a car in exchange for sex, cooking, and cleaning.

32. Defendant Mari once attempted to pay Plaintiff Muja to recruit young, attractive female employees in hopes they might have sex with Defendant Mari. Plaintiff Muja adamantly refused, thinking Defendant Mari's request was disgusting and possibly sex trafficking.

33. Upon information and belief, Erik Chicas recruited young, attractive female employees and prospective employees for Defendant Mari.

34. On one occasion, Plaintiff Muja heard Defendant Mari express an interest in minor females. Plaintiff Muja formed the impression that Defendant Mari's interest was romantic or sexual in nature, which made Plaintiff Muja very uncomfortable as a mother of five children (including girls). Plaintiff Muja and other employees of Defendant Sorrento's have observed Defendant Mari act in ways toward Defendant Mari's minor step-daughter that made them feel uncomfortable (especially in context of other comments that Defendant Mari made toward his step-daughter in the past).

35. In addition to hostile environment sexual harassment, Defendant Mari repeatedly engaged in (and attempted to engage in) *quid pro quo* sexual harassment with female employees at Defendant Sorrento's. Female employees who submit to Defendant Mari's requests for sexual favors received favorable treatment, money, and/or gifts. Those who do not, like Plaintiff Muja, were treated like lowly servants.

36. After receiving a complaint about Defendant Mari having sex with a female employee of Defendant Sorrento's in his restaurant-based office, co-owner Ladonea removed the door from Defendant Mari's office in an attempt to prevent it from happening again.

37. Plaintiff Muja wanted to quit, but she did not think she could find a job that paid as well as her position at Defendant Sorrento's. Plaintiff Muja needed the money to support her family.

38. In addition to informing Defendant Mari and manager Erik Chicas that their sexual harassment was unwelcome and instructing them to stop, Plaintiff Muja also complained to co-owner Ladonea about the sexual harassment, retaliation, and workplace hazards (including physical and verbal abuse) occurring at Defendant Sorrento's.

39. Upon information and belief, Defendants do not have policy or trainings related to sexual harassment, retaliation, or workplace hazards.

40. In response to Plaintiff Muja's complaint, Ladonea instructed Plaintiff Muja to document the issues. In effect, Ladonea placed the heavy and potentially hazardous burden of investigation on the complainant, Plaintiff Muja.

41. Ladonea told Plaintiff Muja that she could take whatever action she wanted against Defendant Mari, but specifically instructed Plaintiff Muja to not do anything that might hurt the restaurant (i.e., Ladonea's investment).

42. Ladonea cautioned Plaintiff Muja to "be careful" when investigating Defendant Mari and/or taking any action against Defendant Mari. Plaintiff Muja understood Ladonea's "word of caution" to mean that Defendant Mari was dangerous and may do something to harm Plaintiff Muja or her family.

43. Plaintiff Muja had heard from co-workers that Defendant Mari was part of organized crime and was dangerous. Plaintiff Muja's family also warned her about volatile people like Defendant Mari, who do whatever they want and then bribe their way out of the consequences.

44. For the above reasons, Plaintiff Muja was very afraid of Defendant Mari and experienced significant stress, fear, and anxiety when going to work at Defendant Sorrento's.

45. Ladonea's response to Plaintiff Muja's complaints of sexual harassment and safety concerns described above did not include any action to stop the sexual harassment or workplace

hazards, remedy their effects, or prevent their recurrence. Rather, Ladonea relied on Plaintiff

Muja to stand up for herself and her female co-workers.

46. Upon information and belief, Ladonea is afraid of Defendant Mari and does not take

effective action to stop Defendant Mari's wrongful conduct described herein.

47. Following Plaintiff Muja's complaint to Ladonea, the sexual harassment and

workplace hazards continued unabated.

48. Upon information and belief, Defendant Sorrento's does not have any policies or

procedures for addressing complaints of sexual harassment or workplace safety; Defendant

Sorrento's does not conduct sexual harassment training; and Defendant Sorrento's does not

inform employees of their civil rights or related reporting options.

49. At some point in 2023, when the sexual harassment was intensifying, Plaintiff Muja

respectfully raised her concerns with Defendant Mari about the hostile work environment at

Defendant Sorrento's. Plaintiff Muja's fear of Defendant Mari made this confrontation a

"terrifying" experience for her. Defendant Mari blew up, yelling loudly at Plaintiff Muja.

50. Following Plaintiff Muja's confrontation with Defendant Mari, Defendant Mari began

physically assaulting Plaintiff Muja at work. Defendant Mari slapped and pushed Plaintiff Muja,

as well as pulled her hair, on multiple occasions at work. Sometimes in conjunction with yelling

at her. Defendant Mari made Plaintiff Muja feel like a "worthless object." Defendant Mari acted

very "hateful" toward Plaintiff Muja (and other female employees who rejected his sexual

advances), doing these things even though Plaintiff Muja had done nothing to incite him.

51. Plaintiff Muja believed Defendants violated the law, including the NC OSH Act.

52. As a result of Defendant Mari's physical abuse and sexual harassment, Plaintiff Muja developed a victim-mentality, causing her to incorrectly blame herself and keep returning to Defendant Mari in hopes the situation might improve.

53. In March 2023, Defendant Mari became so enraged that Defendant Mari pulled out a sharp kitchen knife and held it to Plaintiff Muja's face, threatening her. Plaintiff Muja "freaked out" and quickly walked toward the exit door while calling Ladonea for help. Plaintiff Muja had never been so afraid in her life (nor afraid for her life) as she was then.

54. A co-worker, whose name will remain private in this Complaint, witnessed the knife incident and ran after Plaintiff Muja. The co-worker begged Plaintiff Muja to not leave the co-worker alone with Defendant Mari. Plaintiff Muja was afraid for her life and could not stay.

55. As a result of Defendant Mari threatening Plaintiff Muja with a sharp knife held to her face, Plaintiff Muja developed severe anxiety, fear, and panic attacks. When the first panic attack occurred, Plaintiff Muja went to the hospital emergency room by ambulance because Plaintiff Muja thought she was having a heart attack. Plaintiff Muja was experiencing chest pains and shortness of breath. The hospital admitted Plaintiff Muja, performed multiple tests, and observed her overnight.

56. On or about December 17, 2023, Plaintiff Muja went to the restaurant to speak with Defendant Mari about pay-related issues that Plaintiff Muja had recently discovered. Specifically, Defendant Sorrento's (via Defendant Mari) had been (a) under-reporting Plaintiff Muja's pay on certain occasions; (b) claiming to over-pay Plaintiff Muja on other occasions, thereafter deducting her pay and issuing pay documentation for $0.00; (c) not paying Plaintiff Muja's overtime pay at the increased rate required by the NC Wage & Hour Act; (d) diverting a $7.00 per shift ($14.00 per day) of Plaintiff Muja's pay to bussers without her consent, and (e)

not withholding (or paying) taxes as Plaintiff Muja had instructed on her start-of-employment tax forms, resulting in Plaintiff Muja owing money to state and federal tax authorities. Plaintiff Muja was never informed of any of these issues by any of the Defendants.

57. On multiple occasions, Plaintiff Muja received paychecks for $0.00. When Plaintiff Muja asked Defendant Mari for the reason, Defendant Mari responded that Plaintiff Muja had worked too many hours and all of her pay was diverted to pay taxes.

58. Upon information and belief, Defendants misappropriated Plaintiff Muja's earned wages and tax withholdings for their personal use and other improper purposes.

59. Upon information and belief, "personal use" in the above paragraph likely includes Defendant's Mari's nice home, Porsche, rental properties, luxury personal items, and solicitation of sexual activity and sexual photos (which included employees of Defendant Sorrento's).

60. Upon information and belief, Defendants pay more to illegal immigrants who work in the kitchen at Defendant Sorrento's because no taxes are withheld.

61. When Plaintiff Muja arrived at the restaurant on or about December 17, 2023, Defendant Mari was in a bad mood. Defendant Mari was having an angry confrontation with a young female waitress, yelling directly in her face. To document evidence of the sexual harassment and physical safety issues, as Ladonea had instructed her to do, Plaintiff Muja began video-recording the incident on her cell phone. The video captured Defendant Mari screaming at the young female waitress, cursing, and waiving his hands. At the end, Defendant Mari yelled at the waitress, "Get the fuck out!"

62. Defendant Mari's wife was standing near Plaintiff Muja when the incident in the above paragraph. Plaintiff Muja asked the wife whether she was going to let Defendant Mari act that way. Defendant Mari's wife responded in Spanish, yes, because she (the wife) did not want

to die.  Plaintiff Muja suddenly became terrified at the thought of talking to Defendant Mari.  Plaintiff Muja started having another panic attack and left.  Plaintiff Muja went to her car without talking with Defendant Mari that day.

63. The next day, on or about December 18, 2023, Plaintiff Muja went to work.  As soon as Plaintiff Muja arrived, Defendant Mari was standing in the restaurant waiting for her.  Defendant Mari promptly demanded to know whether Plaintiff Muja had video-recorded the previous day's incident.  Scared, Plaintiff Muja admitted to doing so.  Defendant Mari promptly demanded that Plaintiff Muja send him the video-recording.  Not wanting to anger Defendant Mari further, Plaintiff Muja did as she Defendant Mari instructed.

64. Defendant Mari watched the video-recording in Plaintiff Muja's presence.  Defendant Mari grew red in the face, then stared angrily at Plaintiff Muja for a moment.  Defendant Mari suddenly burst, "Get the fuck out of my restaurant!"

65. Plaintiff Muja responded that Defendant Mari could not fire her for taking a video.  Defendant Mari stated, "This is my restaurant.  I do what the fuck I want."

66. Defendant Mari terminated Plaintiff Muja from Defendant Sorrento's on or about December 18, 2023.

67. As a result of Defendants' wrongful conduct, Plaintiff Muja has suffered serious, debilitating, and irreparable physical, mental, and emotional harm.

68. Plaintiff Muja was a healthy person before working for Defendants.  However, due to Defendants actions described above, Plaintiff Muja has experienced significant stress, tension, fear, nervousness, and anxiety.  Plaintiff Muja has difficulty sleeping, leaving her fatigued and depressed.  Plaintiff Muja experiences regular panic attacks, seizures, night terrors, insomnia, and other stress-induced conditions.  Plaintiff Muja developed a severe vaginal bleeding

condition, which causes a heavy period flow that lasts approximately 16-20 days per month. Plaintiff Muja has lost more than 100 pounds. She has experienced hair loss and memory loss unusual for her age. Plaintiff Muja feels like a completely different person after working for Defendants, a figment of her former self. Plaintiff Muja feels like a "zombie" most days, unable to leave her bed or her couch. She has difficulty emerging from chronic depression to interact with family and friends. Plaintiff Muja has been diagnosed with post-traumatic stress disorder. She has been admitted to the hospital multiple times for serious or combined symptoms.

69. Despite diligently trying to find another job to support her family, Plaintiff Muja has been unable to hold work. One employer terminated her soon after hire for the health-related conditions and symptoms described above, telling her to come back when her health improved.

70. Plaintiff Muja did not experience any of the health-related conditions and symptoms described above until the sexual harassment and workplace hazards caused by the Defendants.

71. The Defendants further caused significant stress within Plaintiff Muja's family, which has taken a significant negative toll on her husband and five young children.

72. Plaintiff Muja has further experienced significant financial stress as a result of Defendants' actions, including loss of work-related pay and expensive medical bills.

73. Plaintiff Muja timely filed her claims with the NCDOL for sex discrimination (sexual harassment), retaliation, workplace hazards, and wage and tax issues. Upon Plaintiff Muja's request, the NCDOL sent Plaintiff Muja a right-to-sue letter, dated July 17, 2024. This Complaint was filed in a timely manner, within 90 days of the NCDOL's right-to-sue letter.

74. Plaintiff Muja timely failed her sex discrimination (sexual harassment) claim with the US EEOC. Plaintiff Muja received a right-to-sue letter, dated October 7, 2024. This Complaint

was filed in a timely manner, within 90 days of the EEOC's right-to-sue letter, and is attached to this Complaint.

## IV.  FIRST CAUSE OF ACTION:

### SEXUAL HARASSMENT

1.  The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

2.  The work environment at Defendant Sorrento's was objectively and subjectively offensive, and Plaintiff Muja was so offended.

3.  Defendants' harassing conduct was directed at Plaintiff Muja and was unwelcome, and Plaintiff Muja informed Defendants and co-owner Antonio Ladonea accordingly.

4.  Defendants' harassing conduct was based on sex.

5.  Defendants' harassing conduct was severe and pervasive.

6.  Defendant Mari conditioned terms, conditions, and privileges of employment on Plaintiff Muja and other employees' acceptance of his sexual advances, which Plaintiff Muja rejected.

7.  Plaintiff Muja has suffered, and continues to suffer, damages as a proximate result of Defendants' sexual harassment.

8.  There is a basis for employer and owner liability.  Specifically, in addition to not likely having a sexual harassment policy, Plaintiff Muja complained of sexual harassment to Defendants and co-owner Antonio Ladonea who did not take sufficient action to stop the sexual harassment, remedy its effects, or prevent its recurrence.  Rather, co-owner Antonio Ladonea instructed Plaintiff Muja to investigate her own sexual harassment complaint (among her other complaints), which caused her to experience significant harm and be terminated by Defendant

Mari.  Moreover, harasser Erik Chicas was, at all times relevant, a supervisor.  Defendant Mari and co-owner Antonio Ladonea were, at all times relevant, alter-egos or proxies for Sorrento's.

## V.  SECOND CAUSE OF ACTION:

## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY (WDPP)

9.   The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

10. Plaintiff Muja was, at all times relevant, an at-will employee of Defendants.

11. Plaintiff Muja and other female waitresses at Defendant Sorrento's were routinely subjected to workplace hazards that were causing or were likely to cause serious injury or serious physical harm.  Such workplace hazards included, but were not limited to, physical assault and battery, verbal abuse (including threats, insults, yelling, and cursing), threat with a deadly weapon, sexual harassment (including sexual assault), and a general hostile and abusive work environment.  Defendants knew of these serious workplace hazards and failed to take prompt effective remedial action.

12. Plaintiff Muja was engaged in legally-protected activity when she refused to accede to Defendant Mari's unwelcome and inappropriate sexual advances and requests for sexual favors, which are prohibited by NCGS § 143-422 (NC Equal Employment Practices Act); when she complained of sex discrimination and sexual harassment, which are prohibited by the NC Equal Employment Practices Act; when she video-recorded and complained about workplace hazards under NCGS § 95-129(1) (NC Occupational Safety & Health Act); when she investigated sexual harassment and workplace hazards at Defendant Sorrento's, in accordance with the law and as directed by Ladonea; when she objected to wage and tax issues that she believed violated NCGS § 95-25.1 *et seq.* (NC Wage & Hour Act) and other tax laws; and when

she exercised her rights under NCGS § 95-241(a) (NC Retaliatory Employment Discrimination Act).

13. Plaintiff Muja was wrongfully discharged from her employment at Defendant Sorrento's by co-owner Defendant Mari. Upon information and belief, co-owner Ladonea also became aware of the wrongful termination and took no remedial action.

14. Plaintiff Muja was discharged because of her engagement in one or more of the above legally-protected activities, each of which was a substantial factor in her termination.

15. Plaintiff Muja has suffered, and continues to suffer, damages as a proximate result of Defendants' wrongful discharge of her employment.

## VI.  THIRD CAUSE OF ACTION:

## VIOLATION OF THE RETALIATORY EMPLOYMENT DISCRIMINATION ACT (REDA)

16. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

17. Plaintiff Muja was exercising her rights under NCGS § 95-241(a) (REDA) when she complained of, and was investigating, Defendants' behavior that violated the NC Wage & Hour Act and the NC Occupational Safety & Health Act.

18. Plaintiff Muja suffered adverse action, including termination.

19. Defendants willfully took adverse action against Plaintiff Muja, including terminating her, for exercising her rights under REDA.

20. Plaintiff Muja has suffered, and continues to suffer, damages as a proximate result of Defendants' adverse action(s) against her.

21. There was no legitimate cause for the adverse action(s) against Plaintiff Muja.

## VII.  FOURTH CAUSE OF ACTION:

## CIVIL ASSAULT

22. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

23. Defendant Mari, by an intentional act and display of force and violence, specifically brandishing a knife in Plaintiff Muja's face, threatened her with imminent bodily injury.

24. By doing so, Defendant Mari caused Plaintiff Muja to have reasonable apprehension that harmful and offensive contact with Plaintiff Muja's body was imminent, especially in light of Defendant Mari's volatile personality and past physical assaults on Plaintiff Muja.

25. Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendant Mari's assault.

## VIII.  FIFTH CAUSE OF ACTION:

## CIVIL BATTERY

26. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

27. Defendant Mari intentionally caused bodily contact with Plaintiff Muja through slapping her, pushing her, and pulling her hair.

28. By doing so, Defendant Mari offended Plaintiff Muja's reasonable sense of personal dignity and caused her physical pain.

29. Defendant Mari perpetrated said bodily contact without Plaintiff Muja's consent.

30. Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendant Mari's repeated batteries.

## IX.  SIXTH CAUSE OF ACTION:

## INTENTIONAL OR RECKLESS INFLICTION OF EMOTIONAL DISTRESS

31. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

32. Defendant Mari engaged in willful and wanton conduct that was atrocious and utterly intolerable.  Defendant Mari further engaged in extreme and outrageous conduct toward Plaintiff Muja, exceeding all bounds of decency.

33. By doing so, Defendant Mari intended to cause severe emotional distress to Plaintiff Muja or recklessly disregarded the likelihood that his acts would cause her severe emotional distress.  Defendant Mari further acted with reckless indifference to Plaintiff Muja's statutory right to work in an environment free from sex discrimination (including sexual harassment) and workplace hazards.

34. Defendant Mari's conduct caused Plaintiff Muja to experience severe emotional distress, which Plaintiff Muja continues to suffer.

35. Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendant Mari's conduct.

## X.  SEVENTH CAUSE OF ACTION:

## VIOLATION OF NC WAGE & HOUR ACT

36. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

37. During the course of Plaintiff Muja's employment, Plaintiff Muja was entitled to her earned standard wages, tips, and overtime in accordance with NCGS § 95-25.1 *et seq.* (NC Wage & Hour Act).

38. Defendants unjustifiably withheld an unknown amount of Plaintiff Muja's earned standard wages, tips, and overtime in violation of the NC Wage & Hour Act. The exact amount should be calculable if proper record-keeping was kept and will be available for discovery.

39. Defendants failed to pay taxes to government authorities based on Plaintiff Muja's declared withholdings on start-of-employment tax documents.

40. Defendants failed to provide notice of its wage policies, procedures, rates of pay, withholdings, or other relevant wage and tax practices to Plaintiff Muja, including any changes thereto (whether before or after Defendants' actions).

41. Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendants' conduct.

## XI. EIGHTH CAUSE OF ACTION:

## CIVIL CONVERSION

42. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

43. Plaintiff Muja earned wages and overtime that Defendants refused to pay her.

44. Plaintiff Muja is the rightful owner of said wages and overtime pay.

45. Upon information and belief, Defendants converted Plaintiff Muja's property for their own use.

46. As a direct and proximate result of Defendants' conversion of Plaintiff Muja's earned wages and overtime pay, Plaintiff Muja has been damaged.

## XII.  NINTH CAUSE OF ACTION:

## NEGLIGENCE

47. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

48. Defendants and co-owner Antonio Ladonea knew about all of the above systemic misconduct and wrongdoing occurring at Defendant Sorrento's.

49. Defendants had duties to act reasonably to avoid causing harm to others, to comply with applicable laws, to respond appropriately to remove known safety hazards in the workplace, and to promptly and equitably respond to complaints and reports of sex discrimination (including sexual harassment).

50. Defendants and co-owner Antonio Ladonea breached their duties, which breaches were the actual and proximate cause of damages to Plaintiff Muja.

51. Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendants' and co-owner Antonio Ladonea's negligence.

## XIII.  TENTH CAUSE OF ACTION:

## PUNITIVE DAMAGES

52. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

53. Defendants' actions were willful, wanton, intentional, malicious, wrongful, hostile, manipulative, oppressive, and without any justification.  Defendants have entirely and blatantly disregarded the law and all bounds of moral decency.

54. As a result of the nature of Defendants' actions, Plaintiff Muja is entitled to punitive damages, treble damages, and liquidated damages, to the extent permitted by each applicable law, and greater than $25,000.

55. Punitive damages are necessary to punish Defendants and deter future wrongdoing.

## XIV.  PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing, the Plaintiff Muja respectfully prays that:

1.  The Court find the Defendants liable to the Plaintiff for her respective causes of action outlined above, or grant a jury trial on all issues so triable;

2.  Plaintiff have and recover of the Defendants, jointly and severally, compensatory damages, including, but not limited to, actual damages, back-pay, front-pay, benefits, loss of earnings, loss of quality of life, past and future mental and emotional distress damages, past and future medical expenses, and all other available damages in an amount in excess of $25,000.00;

3.  Plaintiff have and recover of the Defendants, jointly and severally, punitive damages to punish wrongful actions and deter future misconduct, in an amount in excess of $25,000.00;

4.  Plaintiff have and recover of the Defendants, jointly and severally, treble damages to the extent permitted for violations of REDA;

5.  Plaintiff have and recover of the Defendants, jointly and severally, monetary damages and liquidated damages, on the amount owed to Plaintiff under the NC Wage & Hour Act;

6.  Plaintiff have and recover of the Defendants, jointly and severally, pre-judgment and post-judgment interest at the 8.00% per annum legal rate on all damages awarded;

7.  Plaintiff have and recover of the Defendants, jointly and severally, reasonable attorneys' fees to the extent permitted by law;

8.  Defendant Mari be held personally liable for the damages he directly caused;

9.   The costs of this action be taxed against the Defendants;

10. Plaintiff have the right to amend this Complaint to add additional plaintiffs and claims, including federal claims pending at the US Equal Employment Opportunity Commission for which Plaintiff Muja has not received a right to sue and could not file; and,

11. The Court grant such additional and further relief as this Court deems proper and just.


Respectfully submitted on October 10, 2024.


**McRARY LAW, PLLC**


Ian M. McRary
State Bar No. 43057

ATTORNEY FOR THE PLAINTIFF
231 Government Avenue SW, #1094
Hickory, NC 28603
Phone: (828) 235-5551
Email: ian@mcrarylaw.com