IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| ADRIANA MUJA, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:24-cv-221 |
| | ) | |
| SORRENTO, LLC d/b/a SORRENTO'S | ) | |
| ITALIAN RESTAURANT & PIZZERIA, | ) | |
| and ANTONIO MARI (Individually), | ) | |
| | ) | |
|       Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT
### OF THEIR MOTION TO DISMISS

Defendants Sorrento, LLC d/b/a Sorrento's Italian Restaurant & Pizzeria ("Sorrento") and Antonio Mari ("Mari" or "Defendant Mari"), by and through their undersigned counsel, provide this Court with the following Memorandum of Law in support of their Motion to Dismiss. While Plaintiff's Complaint weaves a salacious and sensational web of distorted and at times fabricated tales, careful analysis reveals it is substantially and fatally deficient at numerous critical points. For the reasons explained below, the Court should grant this Motion to Dismiss with prejudice.

    **I.**    **COMPLAINT ALLEGATIONS**

On or around June 20, 2021, Plaintiff was hired by Defendant Sorrento's in the position of manager. D.E. 1 at ¶ 10. Plaintiff alleges that within a couple of months of her employment, she was subjected to sexual harassment by Defendant Mari and Erik Chicas. *Id*. at 12. Despite the alleged sexual harassment and purported hostile work environment, Plaintiff continued in her position for approximately two and a half years, until she was termination on or around December 18, 2023. *Id*. at ¶ 66.

During her tenure, Plaintiff alleges that she and other unnamed female employees "repeatedly" and "routinely" experienced comments and touching by Defendant Mari and Erik Chicas. *Id*. at ¶¶ 13-20. However, the Complaint alleges no facts showing when or how often any of the alleged conduct occurred. Nevertheless, Plaintiff conclusorily alleges at some point she instructed Defendant Mari and Erik Chicas to stop. *Id*. at ¶ 22. Plaintiff conclusorily alleges despite this, they continued their sexual harassment. *Id*. at ¶ 24. However, absent from the Complaint are any specific factual allegations of continued sexual harassment directed at Plaintiff after the unspecified date she first asked Mari and Chicas to stop. See generally *Id*. at ¶¶ 25-38.

Plaintiff's Complaint also alleges that at some undisclosed time between June of 2021 and December of 2023, she complained to Mr. Ladonea about "the sexual harassment, retaliation, and workplace hazards (including physical and verbal abuse) occurring at Defendant Sorrento's". *Id*. at ¶¶ 20, 38. Plaintiff's Complaint does not allege that she reported anything about Defendant Mari or Erik Chicas specifically. In response to Plaintiff's non-specific report of concerns, Mr. Ladonea instructed Plaintiff to document the issues. *Id*. at ¶ 40.

Plaintiff's Complaint alleges that the vague sexual harassment and workplace hazards involving unnamed people continued unabated after her report to Mr. Ladonea. *Id*. at ¶ 47. However, absent from the Complaint are any factual allegations of sexual harassment involving Mari and Chicas and directed at Plaintiff occurring after Plaintiff's complaint to Mr. Ladonea. Instead, Plaintiff's Complaint relies on speculation and restaurant gossip about Defendant Mari and others as "facts" to support her claims. See generally *Id*. at ¶¶ 27-31, 33-34, 36, 43.

Plaintiff's Complaint alleges "at some point in 2023", she "respectfully raised her concerns with..." Defendant Mari about the purported hostile work environment and he yelled at her. *Id*. at 49. Plaintiff's Complaint alleges that Defendant Mari acted very "hateful" toward her and other

female employees who rejected his sexual advances. *Id*. at ¶ 50. However, in a calculated slight of hand, Plaintiff's Complaint fails to provide even conclusory allegations regarding her treatment in the workplace as opposed to those who did not reject his alleged sexual advances. The Complaint also fails to present any factual allegations of any alteration of the terms and conditions of Plaintiff's employment or even that her ability to work was impaired in any way. Tellingly, despite her lengthy litany of ailments, she nowhere claims her capacity to perform her job duties was even slightly impacted. (See generally *Id.* at ¶¶ 44, 55, and 68) .

In March of 2023, Plaintiff alleges that Defendant Mari put a kitchen knife to her face and threatened her. *Id*. at ¶ 53. Plaintiff does not allege she reported this incident to any supervisor or the police. Interestingly, while Plaintiff alleges that she was afraid for her life and could not stay, Plaintiff continued to work for Defendant Sorrento for another nine months. See *Id*. at ¶ 53. There are no factual allegations of continued "workplace hazards" after the purported March of 2023 incident.

On December 17, 2023, Plaintiff alleges she went to the restaurant to speak with Defendant Mari about pay-related concerns. *Id*. at ¶ 56. However, Plaintiff does not allege that she reported such concerns to anyone outside of Sorento's. Instead, Plaintiff alleges she recorded Defendant Mari yelling, cursing, and waiving his hands at a female waitress. *Id*. at ¶ 61. Plaintiff alleges that she left that day without talking to Defendant Mari. *Id*. at ¶ 62. Plaintiff alleges at work the following day, Defendant Mari asked if she had been recording him at the restaurant and asked her to send him the video. *Id*. at ¶ 63. Plaintiff alleges that she was terminated on December 18, 2023. *Id*. at ¶ 66.

## III.     LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." A 12(b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (internal citation omitted). Courts should "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, courts are not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (2000).

Courts should grant 12(b)(6) motions where the complaint lacks "enough facts to state a claim for relief that is plausible on its face." *Iqbal* 556 U.S. at 679 (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## IV. ARGUMENT

### A. Plaintiff's Complaint Fails to State a Claim Against Defendant Mari in His Individual Capacity Because There is No Individual Liability Under Title VII.

Plaintiff's first cause of action for sexual harassment must be dismissed as to Defendant Mari because there is no individual liability under Title VII. See *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (noting that individual employees cannot be held liable for Title VII claims). As stated in *Lissau*, Title VII did not contemplate individual liability as an available remedy, and "[t]o permit individual liability would improperly expand the remedial scheme crafted by Congress." *Lissau*, 159 F.3d at 180-81. In fact, this Court has consistently dismissed claims asserted against individuals under Title VII. See *Wright v. StoneMor Partners LLP*, 2012 WL 4006120, at *2 (W.D.N.C. Sept. 12, 2012) (citation omitted) (dismissing Title VII claims against individual defendants and explaining "Fourth Circuit precedent expressly prohibits individual liability under Title VII."); *Riley v. Foot Locker, Inc.*, 2010 WL 3895504, at *1-2 (W.D.N.C. Sept. 30, 2010) (dismissing individual defendant in Title VII action pursuant to 12(b)(6)); *Snyder v. Ohio Elec. Motors, Inc.*, 2018 WL 1353124, at *2 (W.D.N.C. Mar. 15, 2018)(same); *Murphy v. Cleveland Cnty.*, 2021 WL 3824684, at *3 (W.D.N.C. Aug. 26, 2021)(dismissing Title VII claims against individual defendants and holding "it is well settled that there can be no individual liability under Title VII—the action is against the employer only.").

Furthermore, the Fourth Circuit has clearly held that individual Defendants do not qualify as "employers" for purposes of a Title VII lawsuit. *Lissau*, 159 F.3d at 180-181; *Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (stating that "Title VII does not provide a remedy against individual Defendants who do not qualify as 'employers.'"); *Widner v. Galasso & Sons, LLC*, No. C/A 2:14-4243-DCN-BM, 2015 U.S. Dist. LEXIS 143674, at *7-8 (D.S.C. Sep. 23, 2015). In the Fourth Circuit, the corporate veil may be "pierced" allowing individual liability for an owner to

attach only where the individual "unfairly used the corporate form", either fraudulently or wrongly.  See *Mayes v. Moore*, 419 F. Supp. 2d 775, 779-780 (M.D.N.C. 2006). *Widner v. Galasso & Sons, LLC*, No. C/A 2:14-4243-DCN-BM, 2015 U.S. Dist. LEXIS 143674, at *9 (D.S.C. Sep. 23, 2015).  However, it is not sufficient to simply allege that an individual owns a company, and is therefore an "employer" within the meaning of Title VII and therefore subject to individual liability.  *Mayes,* 419 F. Supp. 2d at 782 ("Finding dismissal appropriate where no general allegation of injustice or unfairness, or specific allegations of fraud found in the complaint and thus, the elements of the alter-ego doctrine were not satisfied).  Critically, Plaintiff's Complaint makes no factual allegations of fraudulent use of Sorento's corporate form.

Here, Plaintiff's Complaint alleges that Defendant Mari is a co-owner of Defendant Sorrento's and Plaintiff Muja's supervisor.  D.E. 1 at ¶¶ 3-4.  The Complaint also conclusorily alleges that Defendant Mari was the alter-ego or proxy of Defendant Sorrento's. *Id*. at ¶ 8.  Absent from Plaintiff's Complaint are any allegations that Defendant Mari fraudulently or unfairly "used the corporate form".  *Mayes,* 419 F. Supp. 779-80. Thus, Plaintiff's Complaint has not satisfied the requirements for piercing the corporate veil.  Consequently, Defendant Mari individually is not subject to Title VII liability, and Plaintiff's Title VII claim against him should be dismissed with prejudice.

**B. Plaintiff's Title VII Claims Against Defendant Mari in His Individual Capacity Must Be Dismissed Because Plaintiff Failed to Name Him as Respondents in Her EEOC Charge.**

Even if Plaintiff was not precluded as a matter of law from proceeding with her Title VII Claim against Defendant Mari, her complaint against him still must be dismissed because she failed to exhaust her administrative remedies with respect to Defendant Mari.

Before a plaintiff may file Title VII claim, she must first file an administrative charge of discrimination with the EEOC. See 42 U.S.C. § 2000e-5(e)(1) (stating charge-filing requirement for Title VII claims). The charge-filing requirement is a mandatory rule that a court must enforce if properly raised. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1849-50 (2019). At the appropriate time after the charge is filed, a plaintiff may bring a civil action "against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). The Fourth Circuit interprets this provision to allow civil action only against the respondent(s) named in the charge, not against unnamed parties. *Causey v. Balog*, 162 F.3d 795, 800 (4th Cir. 1998). Furthermore, Courts in this District have dismissed claims under Title VII against individuals who were not named as respondents in the charge of discrimination. See *McDaniel v. Greyhound Lines, Inc.*, No. 3:08cv130, 2008 WL 2704774, at *2 (W.D.N.C. July 7, 2008) (dismissing plaintiff's Title VII action against individual defendants not named in plaintiff's EEOC charge). It is undisputed that Defendant Mari is not named as a respondent in Plaintiff's EEOC charge.[1] Instead, the only respondent named by

---

[1] A true and accurate copy of Plaintff's EEOC Charge is attached hereto as **Exhibit A**. Given that Plaintiff referenced her EEOC Charge in her Complaint (D.E. 1 at ¶ 74 and Exhibit 1), and that the EEOC Charge is part of the public record, the Court may consider this document without converting the motion to dismiss into a motion for summary judgment. See *Brown v. Institute for Family Centered Services, Inc.*, 394 F. Supp. 2d 724, 728 n.2 (M.D.N.C. 2005) (holding that the consideration of EEOC charges referenced in, but not attached to, the plaintiff's complaint is proper for Rule 12(b)(6) purposes and does not convert the motion into one for summary judgment); See also *Whittington v. N. Carolina Dep't of Juvenile & Delinquency Prevention*, No. CIV. 1:05CV348, 2006 WL 909141, at *1 (W.D.N.C. Apr. 7, 2006) (citations and quotations omitted) (noting that a court may take judicial notice of public records and may consider authentic documents referenced or relied upon in the complaint at the 12(b)(6) stage). Similar to this case,

Plaintiff in her EEOC charge is "Sorrento Pizzeria & Italian Restaurant". *Id*. Accordingly, Plaintiff's claims against Defendant Mari should be dismissed with prejudice.

### C. Plaintiff's Complaint Fails to Allege any Facts Regarding Her Experience of an Altered Work Environment

An actionable Title VII claim must allege facts demonstrating the work environment was characterized by offensive conduct "because of sex…" that is both severe and pervasive. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67-68 (1986). There is nothing more fundamental to the "severe and pervasive" standard than the requirement that the Plaintiff show the terms and conditions of her work environment were actually altered by the alleged harassment. *Harris Forklift Sys.*, 510 U.S. 17 (1993). Simply put, to allege actionable sexual harassment, a Plaintiff must show the allegedly offending conduct actually altered conditions of her work environment. *Pueschel v. Peters*, 577 F.3d 558, 565-66 (4th Cir. 2009).

Despite a sensational catalogue of alleged harassment, Plaintiff does not even conclusorily allege her workplace was so altered she was impaired in performing her job. *See Meritor Savings Bank*, 477 U.S. at 67 ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment…."). Surely, if all the events Plaintiff alleges actually occurred, there would be some factual support for claiming Plaintiff was impaired in performing the duties of her job. Yet, nothing appears in the Complaint. Instead, Plaintiff admits she stayed employed by Sorrento's for about 2.5 years after the first alleged act of harassment without any impediments to performing her job duties. Complaint at ¶ 66. In fact, Plaintiff claims to have continued to work for Sorrento's for 9 months after allegedly having been

---

the defendant in *Whittington* attached the plaintiff's EEOC charge as an exhibit to its motion to dismiss when the plaintiff referred to the charge but failed to attach it to the complaint. *Id*. The Court considered plaintiff's EEOC charge when ruling on the motion to dismiss because it was referenced in the complaint and is part of the public record. *Id*.

threatened with a knife all while still performing her job duties without impediment. *Id.* at ¶ 53. The lack of any facts pled to support any rational inference that Plaintiff actually experienced an alteration in her work environment requires dismissal of her Title VII sexual harassment claim.

> **D. Plaintiff's Complaint Fails to State a Claim Against Defendant Mari in His Individual Capacity Because There Is No Individual Liability Under Wrongful Discharge In Violation of Public Policy**

It is well settled that a common law wrongful discharge claim brought under North Carolina law can be asserted only against an employer. *Gibson v. Corning Inc.*, No. 5:14-CV-105-BO, 2015 U.S. Dist. LEXIS 48905, 2015 WL 1880188, at *4 (E.D.N.C. Apr. 13, 2015) ("[A] claim for wrongful discharge under North Carolina law cannot be brought against an individual—a plaintiff may only bring suit against his employer for wrongful discharge."); *Johnson v. North Carolina*, 905 F. Supp. 2d 712, 726 (W.D.N.C. 2012) ("Pursuant to established North Carolina law, 'a plaintiff may only bring a wrongful discharge action against the plaintiff's employer, not against the employer's agents . . . .'") (quoting *Sampson v. Leonard*, No. 4:10-121, 2011 U.S. Dist. LEXIS 3202, 2011 WL 129634, at *3 (E.D.N.C. Jan. 12, 2011)); *Arbia v. Owens-Illinois, Inc.*, No. 1:02 CV 00111, 2003 U.S. Dist. LEXIS 9429, 2003 WL 21297330, at *7 (M.D.N.C. June 4, 2003) ("NCEEPA does not apply to an employer's agents; rather, employers are the only covered entity."); *Hilderbrand v. Pelham Transp. Corp.*, No. 1:20CV1020, 2021 U.S. Dist. LEXIS 121970, at *17-18 (M.D.N.C. June 30, 2021).

Furthermore, as discussed above, Plaintiff's Complaint fails to allege any facts that support piercing the corporate veil. Simply, "substantial ownership of a corporation by one individual is not sufficient to pierce the corporate veil." *Burnette v. Austin Med., Inc.*, No. 1:11CV52, 2011 U.S. Dist. LEXIS 43027, 2011 WL 1769445, at *5 (W.D.N.C. Apr. 14, 2011), *report and recommendation adopted*, No. 1:11CV52, 2011 U.S. Dist. LEXIS 49600, 2011 WL 1754166

9

(W.D.N.C. May 9, 2011) (dismissing wrongful discharge claim where plaintiff failed to plead "sufficient factual allegations supporting a claim that the Court should disregard the corporate form of [the corporate defendant] and hold its sole owner liable under . . . North Carolina law"); *Magaha v. W & B Trucking, Inc.*, 2015 U.S. Dist. LEXIS 167026, 2015 WL 8759260, at *5 (dismissing wrongful discharge claims against a trucking company's president and vice president because plaintiff "made no allegations whatsoever regarding Defendants being involved in a joint venture or other corporate form that would raise a question as to whether individual liability was appropriate").

There are no factual allegations in the Complaint to suggest that Defendant Mari was using the corporate form in an inappropriate manner, much less in a disregard of the corporate form. Defendant Mari is a partial owner of Defendant Sorrento—he is not Plaintiff's employer. Thus, Plaintiff's wrongful discharge claim against Defendant Mari should be dismissed.

### E. Plaintiff's Complaint Fails to State a Claim Against All Defendants for Violation of The Retaliatory Employment Discrimination Act (REDA)

In support of her REDA claim, Plaintiff conclusorily alleges she "complained of, and was investigating Defendants' behavior that violated NC Wage & Hour Act and the NC Occupational Safety & Health Act." (D.E. 1 at p. 15, ¶ 17). However, Plaintiff's alleged complaint and investigation fails to establish she engaged in any rights protected by REDA.

N.C. Gen. Stat. § 95-241(a) (2011) provides that "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to . . . [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to . . . Article 16 of this Chapter[,]" the Occupational Safety and Health Act of North Carolina ("OSHA"), N.C. Gen. Stat. § 95-126 (2011), *et. seq.* or Article 2A of this Chapter, the Wage and Hour Act, N.C. Gen. Stat §

95-25.1, *et. seq.*. In order to establish a *prima facie* case under REDA a plaintiff must show "(1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." *Fatta*, 221 N.C. App. at 371, 727 S.E.2d at 598-99 (quoting *Wiley v. UPS, Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (2004)); *Hopkins v. MWR Mgmt. Co.*, 2017 NCBC LEXIS 47, *22-23, 2017 NCBC 46. Critically, REDA does not protect employees when they make only internal complaints to the employer rather than to some external authority. *Pierce v. Atlantic Group, Inc.,* 219 N.C. App. 19, *discret. review denied*, 366 N.C. 235 (2012). *See also, Whitings v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222 (N.C. App. 2005) ("exercise of one's rights under the Act is the legally protected activity" which does not extend to internal requests that employer pay medical costs rather than filing Worker's Compensation claim).

Here, there are no factual allegations in the Complaint that plausibly allege Plaintiff exercised any rights protected by REDA. First, there are no allegations that Plaintiff ever reported any behavior that violated North Carolina Wage & Hour Act to Defendant Sorrento or anyone else. In fact, Plaintiff's Complaint explicitly acknowledges that she left the restaurant without speaking to Defendant Mari about purported pay-related issues on December 17, 2023. See *Id*. at ¶¶ 56, 63. Thus, Plaintiff's Complaint fails to establish that she exercised her rights with regard to the North Carolina Wage and Hour Act.

Alternatively, Plaintiff alleges that she complained of, and was investigating Defendants' behavior that violated the North Carolina Occupational Safety & Health Act ("NCOSHA"). *Id*. at p. 15, ¶ 17. However, courts have held that merely talking to an internal supervisor about potential safety concerns is not a "protected activity" under REDA. *Jurrissen v. Keystone Foods, LLC*,

11

2008 U.S. Dist. LEXIS 63901, 15-16 (2008); *see also, e.g.*, *Delon v. McLaurin Parking Co.*, 367 F. Supp. 2d 893, 902, *aff'd*, 146 Fed. Appx. 655 (2005) ("The complaint that Plaintiff made to [a manager] [i]s not . . . protected under REDA[;] [r]ather, it was merely a complaint to a manager about a supervisor"); *Cromer v. Perdue Farms, Inc.*, 900 F. Supp. 795, 801 n.6 (1994), *aff'd*, 1995 U.S. App. LEXIS 25327 (1995) (explaining that "North Carolina has never recognized a cause of action for wrongful discharge in favor of employees who orally complained to their employers about unsafe working conditions" and noting that the plaintiff "did not initiate a complaint with the Occupational Safety and Health Review Commission or threaten to initiate any such complaint."); *Pierce*, 219 N.C. App. at 27. Here, the Complaint alleges that Plaintiff "complained to co-owner Ladonea about the … workplace hazards." D.E. 1 at ¶ 38. There are no allegations that Plaintiff reported these concerns externally. Thus, Plaintiff fails to establish the first element of a REDA claim.

Even if Plaintiff could establish that her internal report constituted a protected activity under N.C. Gen. Stat. § 95-241(a), she fails to plead any factual allegations to support that she was terminated because of her report.

First, Plaintiff has not pled any factual allegations to support an inference of causation based on a close temporal proximity, because she fails entirely to allege when she engaged in such protected activity. Close temporal proximity between the protected activity and the adverse employment action may be used to satisfy the causation element of a REDA claim. *See Roberson v. Paul Smith, Inc.*, No. 5:07-CV-284-F, 2011 U.S. Dist. LEXIS 16553, 2011 WL 683900, at *8 (E.D.N.C. Feb. 18, 2011). However, "courts have held a time period of more than two and one-half months to constitute the absence of close temporal proximity." *Id.* (citing *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 691, 575 S.E.2d 46, 50 (2003) (approximately eighty-one

days); *Brown v. Sears Auto. Ctr.*, 222 F. Supp. 2d 757, 764 n.10 (M.D.N.C. 2002) (at least three months); *Shaffner v. Westinghouse Elec. Corp.*, 101 N.C. App. 213, 216, 398 S.E.2d 657, 659 (1990) (two and one-half to three months)).

Here, the last conduct alleged in Plaintiff's Complaint that hypothetically could qualify as protected activity was "asking Ladonea for help" in March of 2023. D.E. 1 at ¶ 53. There is a nine month period between this conduct and Plaintiff's termination. This extended period of time far exceeds what courts have considered to be close temporal proximity. *Smith*, 568 F. Supp. 2d at 615.

Second, Plaintiff alleges that Defendant Mari terminated her on or around December 18, 2023. D.E. 1 at ¶ 66. To succeed on their REDA claim, a plaintiff must demonstrate that "retaliatory motive was a substantial factor in the adverse employment actions taken by the defendant." *Wiley v. United Parcel Serv. Inc.,* 102 F. Supp. 2d 643, 650 (1999), *affm'd on other grounds,* 11 Fed. Appx. 176, 2001 WL 431478 (4th Cir. Apr. 27, 2001). Here, Plaintiff merely alleges that there was "no legitimate cause for the adverse action(s) against her." D.E. 1 at p. 15 ¶ 21. Absent from the Complaint are any allegations that Defendants were motivated to terminate her as a result of her report to Mr. Ladonea or any other colorable protected activity. *Smith v. Comput. Task Grp., Inc.*, 568 F. Supp. 2d 603, 613 (M.D.N.C. 2008) citing *Swain v. Elfland*, 145 N.C. App. 383, 387, 550 S.E. 2d 530, 534 (2001)("[A]lthough evidence of retaliation…may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation."). In fact, Plaintiff's Complaint fails to allege that Defendant Mari was even aware of Plaintiff internal complaints to Mr. Ladonea at the time of her termination. *McCollum v. Tisch,* 479 U.S. 1034, 107 S. Ct. 883, 93 L. Ed. 2d 836 (1987); *Wiley,* 102 F. Supp. 2d at 651 (finding that the plaintiff did not establish a causal

13

connection when the plaintiff's supervisor had no knowledge of the plaintiff's earlier protected activity); *Brown v. Sears Auto. Ctr.*, 222 F. Supp. 2d 757, 763 (M.D.N.C. 2002). Thus, Plaintiff's Complaint fails to plausibly allege a violation of REDA and should be dismissed with prejudice.

### F. Plaintiff's Complaint Fails to State a Claim Against Defendant Sorrento for Civil Assault and Battery

"A corporation may be held vicariously liable for [ ] an intentional tort of its [employee] if the [employee] acted within the scope of his or her employment and in furtherance of the employer's business. *Salley v. Petrolane, Inc.*, 764 F. Supp. 61, 63 (W.D.N.C. 1991); *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 340 S.E.2d 116, 121 (N.C. Ct. App. 1986); *Young v. Fed. Deposit Ins. Corp.*, 103 F.3d 1180, 1190 (4th Cir. 1997). An employer can also be liable for the intentional tort of its employee where the employee's "act is expressly authorized by the" employer or where the employee's "act is ratified by the" employer. *Keeley v. Synagro Techs., Inc.*, No. 3:21-CV-321-RJC-DCK, 2022 U.S. Dist. LEXIS 219541, at *11 (W.D.N.C. Nov. 16, 2022) citing *Salley v. Petrolane, Inc*., 764 F. Supp. 61, 63 (W.D.N.C. 1991).

First, Plaintiff has not alleged that her employer, Defendant Sorrento, expressly authorized Defendant Mari's alleged actions. Furthermore, nothing in Plaintiff's Complaint indicates that Defendant Mari's alleged conduct was committed in furtherance of Sorrento's business. In fact, courts have repeatedly found that such acts do not fall within the scope of employment. *Hamilton v. Hill*, No. 2:20-cv-00368, 2020 U.S. Dist. LEXIS 111140, 2020 WL 3472420, at *2 (S.D. W. Va. June 25, 2020) (finding a claim of battery of an inmate by the unlawful use of pepper spray is an intentional act outside the scope of correctional officers' employment)); *Jeffers v. Aldridge*, No. 3:22-0268, 2023 U.S. Dist. LEXIS 33050, at *13 (S.D. W. Va. Feb. 28, 2023). Finally, Plaintiff's Complaint does not contain any allegations that Defendant Sorrento ratified Defendant Mari's alleged tortious actions, and thus, Plaintiff has not established vicarious liability. *Tilson v. Every*

14

*Day is a Holiday, Inc.*, No. 3:17-CV-00018-GCM, 2017 U.S. Dist. LEXIS 120294, at *18 (W.D.N.C. Aug. 1, 2017) (finding since the complaint did not contain an allegation that Defendant Centurion ratified Defendant Spangler's alleged tortious actions, that allegation will not be considered by this Court.). Accordingly, the Court should dismiss Plaintiff's civil assault and battery causes of actions against Defendant Sorrento.

### G. Plaintiff's Complaint Fails to State a Claim Against Defendants Sorrento and Mari for Negligence

The North Carolina Workers' Compensation Act was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence. *See, e.g., Pleasant v. Johnson*, 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985); *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003).

An employee's remedies for injuries sustained in the course of employment attributable to the negligence of an employer, a co-employee, or a supervisor, are limited to those expressly provided by the Workers' Compensation Act. *See* N.C. Gen. Stat. § 97-9 and 97-10.1 (2017). Mental injuries, as well as physical injuries, are compensable under the Workers' Compensation Act as long as the resulting disability meets statutory requirements. *Jordan v. Cent. Piedmont Cmty. Coll.*, 124 N.C. App. 112, 119, 476 S.E.2d 410, 414 (1996), *disc. review denied*, 345 N.C. 753, 485 S.E.2d 53 (1997); *Jones v. Wells Fargo Co.*, 260 N.C. App. 705, 817 S.E.2d 497 (2018).

The Workers' Compensation Act's exclusivity provision "bar[s] a worker from maintaining a common law negligence action against his employer" for injuries sustained in the course of his employment, and "from suing a co-worker whose negligence caused the injury." *Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985). Additionally,

this exclusivity provision "precludes a claim for ordinary negligence, even when the employer's conduct constitutes willful or wanton negligence." *Wake Cnty. Hosp. Sys., Inc. v. Safety Nat'l Cas. Corp.*, 127 N.C. App. 33, 40, 487 S.E.2d 789, 793, *disc. review denied*, 347 N.C. 410, 494 S.E.2d 600 (1997).

The North Carolina Supreme Court has previously held that there is a narrow exception to the exclusivity provision of the Workers' Compensation Act that applies "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct." *Woodson v. Rowland*, 329 N.C. 330, 340-41, 407 S.E.2d 222, 228 (1991). "Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act." *Id.* at 341, 407 S.E.2d at 228.

However, this exception from *Woodson v. Rowland*, represents a narrow holding in a fact-specific case, and its guidelines stand by themselves. *This exception applies only in the most egregious cases of employer misconduct*. Such circumstances exist where there is uncontroverted evidence of the employer's intentional misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death. *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 557, 597 S.E.2d 665, 668 (2003) (emphasis added), *reh'g denied*, 358 N.C. 159, 593 S.E.2d 591 (2004).

Here, Plaintiff alleged in her Negligence claim that she suffered "damages" because Defendants and Mr. Ladonea acted <u>negligently</u> in failing to act and respond to misconduct and wrongdoing occurring at Defendant Sorrento's. D.E. 1 at p. 19, ¶¶ 47-51. The Negligence claim contains no allegations of intentional conduct on the part of Defendant Sorrento. Indeed, the Negligence claim by definition does not allege intentional acts. "In sum, the [conduct alleged in

Plaintiff's complaint] in the present case fails to establish that defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death to [Plaintiff]." *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 669. Thus, Plaintiff's negligence cause of action against Defendants Sorrento and Mari should be dismissed.

V. **CONCLUSION**

For the foregoing reasons, the first and second causes of action should be dismissed with prejudice to the extent they are alleged against Defendant Mari, the third cause of action should be dismissed with prejudice for all Defendants, the fourth and fifth causes of action should be dismissed with prejudice to the extent they are alleged against Defendant Sorrento and the ninth cause of action should be dismissed with prejudice as to both Defendants.

This the 9th day of December, 2024.

        s/ Kevin V. Parsons, NC State Bar No. 19226
        Margaret Taviano, NC State Bar No. 61506
        Lewis Brisbois Bisgaard & Smith LLP
        521 East Morehead Street, Suite 250
        Charlotte, North Carolina 28277
        Phone: 704-557-9929
        Fax: 704-557-9932
        Kevin.Parsons@lewisbrisbois.com
        Margaret.Taviano@lewisbrisbois.com

        *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing "Defendants' Memorandum In Support of Their Motion to Dismiss" was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification to the following:

>Ian M. McRary
>McRary Law, PLLC
>231 Government Avenue SW, #1094
>Hickory, North Carolina 28603
>ian@mcrarylaw.com
>
>Jacob J. Modla
>Cromer Babb & Porter
>115 Elk Avenue
>Rock Hill, SC 29730
>jake@cromerbabb.com

This the 9th day of December, 2024.

s/ Kevin V. Parsons