# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

## THE HONORABLE DAVID C. KEESLER

| | |
|---|---|
| ADRIANA MUJA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 5:24-cv-221 |
| | ) |
| SORRENTO, LLC d/b/a SORRENTO'S | ) |
| ITALIAN RESTAURANT & PIZZERIA, | ) |
| and ANTONIO MARI (Individually), | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Muja, through undersigned counsel, provides this Court with the following Memorandum of Law in support of her Response to Defendants' Motion for Partial Dismissal.

For the reasons explained below, the Court should deny the Defendants' Motion for Partial Dismissal or, in the alternative, grant Defendants' motion without prejudice so Plaintiff Muja can have an opportunity to amend her Complaint.

### I.    SUMMARY OF THE RELEVANT FACTS

On or around June 20, 2021, Plaintiff Muja was hired by Defendant Sorrento in the position of manager. Compl. at ¶ 10. She worked for co-owner and supervisor Defendant Mari. *Id*. at ¶ 10. Within a couple of months of her employment, she was subjected to "relentless" sexual harassment by Defendant Mari and Erik Chicas. *Id*. at ¶ 12. Specific examples of the sexual harassment that Plaintiff Muja and other female employees suffered at Defendant Sorrento are provided throughout the Complaint, which is incorporated herein by reference. Defendant Mari

1

and Mr. Chicas routinely called Plaintiff Muja derogatory sexual terms, like "Bitch" and "Cunt", and asked her questions about her sexual history. *Id*. at ¶¶ 14, 16. Mr. Chicas repeated groped Plaintiff's vagina over her clothes without her consent. *Id*. at ¶ 19. Plaintiff Muja both refused Defendant Mari and Mr. Chicas' sexual advances and instructed them to stop, but the sexual harassment continued unabated. *Id.* at ¶¶ 22-24. Plaintiff Muja cannot recall the exact dates, so they are not included in the Complaint. The extreme stress and anxiety that Plaintiff Muja experienced at Defendant Sorrento resulted in serious health conditions, including one that has impaired her memory. *Id.* at ¶ 68.

Female employees who consented to, or tolerated, Defendant Mari and Mr. Chicas' sexual advances received or were offered preferential treatment, including things like money, gifts (e.g., manicures, pedicures, and a Honda Accord sports car), legal immigration status, lodging, and favoritism. *Id*. at ¶ 27-31. Defendant Mari purchased the sports car for a female employee who had sex with him. When she withheld sex, he threatened to terminate her unless she returned the car. *Id*. at ¶ 29. Female employees who did not consent or tolerate sexual advances (i.e., victims of sexual harassment), including Plaintiff Muja, were treated differently – Like "lowly servants" and "worthless object[s]." *Id.* at ¶¶ 35, 50. Plaintiff Muja wanted to quit, but she was making good money as a manager and needed that money to support her five children. *Id.* at ¶¶ 34, 37.

The sexual harassment intensified in 2023. *Id.* at ¶ 49. When Plaintiff Muja complained about the rampant sexual harassment to co-owner Ladonea, and later to Defendant Mari, no action was taken to stop it. *Id.* at ¶ 47. In fact, the sexual harassment escalated, now combined with extreme verbal and physical abuse (including Defendant Mari yelling at, slapping, pushing, pulling the hair of, and holding a knife to, Plaintiff Muja. *Id.* at ¶¶ 49-55. After a complaint about Defendant Mari's sexual harassment, retaliation, and workplace hazards (including physical and

verbal abuse) to co-owner Ladonea, Ladonea instructed Plaintiff Muja (the complainant) to investigate her own complaints by gathering documentation. *Id.* at ¶¶ 38, 40. Plaintiff Muja believed Defendants were violating the law, including the NC OSH Act. *Id*. at ¶ 51. Despite the severe stress and anxiety that defined the work environment at Defendant Sorrento, Plaintiff took on the additional job duty of conducting a workplace investigation into Defendant Mari's misconduct and mistreatment of herself and other female employees. *Id*. at ¶¶ 45, 51.

On or about December 17, 2023, Plaintiff Muja, as part of her investigation, video-recorded Defendant Mari's angry confrontation with a young female waitress. *Id*. at ¶ 61. Defendant Mari was yelling, cursing, and waiving his hands at her. *Id*. The very next day, Defendant Mari required Plaintiff Muja to produce the video, which she did. *Id*. at ¶ 63. Defendant Mari watched the video, and then terminated Plaintiff Muja on the spot. *Id*. at ¶ 64. When Plaintiff Muja contested her termination, Defendant Mari stated, "This is my restaurant. I do what the fuck I want." *Id*. at ¶ 65.

Defendant Mari does whatever he wants, without regard to the Sorrento, LLC corporate entity. Plaintiff Muja believes that co-owner Ladonea is afraid of Defendant Mari and does not take effective action to stop Defendant Mari's wrongful conduct. *Id*. at ¶ 46. In addition to the above-described sexual harassment, inappropriate sexual advances on female employees, assault, battery, and severe physical and verbal abuse, Defendant Mari abused the Defendant Sorrento, LLC corporate structure for financial gain. Specifically, Defendant Mari did not pay Plaintiff Muja her full wages (including overtime at the 1.5x rate), nor did Defendant Mari pay Plaintiff Muja's state and federal taxes as she had instructed on her start-of-employment tax forms. *Id*. at ¶¶ 56, 57. Plaintiff Muja strongly believes that Defendant Mari used that money to benefit both himself (e.g., nice home, Porsche, rental properties, luxury personal items, and gifts for female employees) and Defendant Sorrento, LLC (e.g., payment for illegal immigrant employees), which benefitted both

Defendant Mari and Ladonea. *Id*. at ¶¶ 4, 58-60.

Neither Defendant Mari nor co-owner Ladonea took action to address the problems of which Plaintiff Muja complained. *Id*. at ¶¶ 46-47. As a result, Defendants terminated Plaintiff Muja and left her to deal with the extensive harm they had caused. *Id*. at ¶¶ 66-72. Though Plaintiff Muja was still conducting her investigation when she was terminated, she made timely complaints to both the U.S. Equal Employment Opportunity Commission (EEOC) and the N.C. Department of Labor (NCDOL) after her termination. *Id*. at ¶¶ 73-74. Defendant Mari and co-owner Ladonea were specifically named in Plaintiff Muja's EEOC Complaint. *Id*.

## II.     LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) motions test only the legal sufficiency of a complaint and "[do] not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Butler v. United States*, 702 F.3d 749, 752 (4th Cir. 2012) (internal citation omitted). Courts should "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Courts should deny 12(b)(6) motions where the complaint has "enough facts to state a claim for relief that is plausible on its face." *Iqbal* 556 U.S. at 679 (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to

relief." *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Requiring plausibility "does not impose a probability requirement at the pleading stage." *Twombly*, 550 U.S. at 556.

Importantly, a motion to dismiss is appropriately granted when a complaint states "a defective cause of action," but not when a complaint states "a defective statement of a good cause of action" based on legal technicalities. *Sutton v. Duke,* 277 N.C. 94, 105-06, 176 S.E.2d 161, 168 (1970) (citations omitted).

### III. ARGUMENTS

Plaintiff Muja responds to Defendants' arguments using section letters that correspond to those letters in their Motion for Partial Dismissal.

**A. Plaintiff Muja Alleges Sufficient Facts to State a Claim Under Title VII of the Civil Rights Act of 1964 ("Title VII") Against Defendant Mari in His Individual Capacity.**

The Defendants' argument that individual defendants can <u>never</u> be held liable under Title VII is wrong. A supervisor is <u>generally</u> not liable in his individual capacity for a Title VII violation. *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) (emphasis added). Under certain circumstances, however, an individual can be liable for Title VII violations under a corporate veil-piercing theory. *Burnette v. Austin Med., Inc.*, No. 1:11CV52, 2011 WL 1769445, at *4 (W.D.N.C. Apr. 14, 2011) (citations omitted). While a Title VII violation alone is insufficient to pierce the corporate veil, the defendant's abuse of the corporate form will justify piercing the corporate veil when necessary to prevent injustice or fundamental unfairness. *See id*. at 5; *see also DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 687 (4th Cir.1976); *see also Mayes v. Moore*, 419 F.Supp.2d 775, 781 (M.D.N.C. 2006).

A court may disregard the corporate form and impose individual liability under the alter-ego theory when (1) the shareholder dominates and controls the organization and (2) imposing

such liability is needed to avoid injustice or fundamental unfairness. *Mayes*, 419 F.Supp.2d at 781. Courts have found that fraud; gross undercapitalization; failure to observe corporate formalities; siphoning of the corporation's funds; non-functioning of officers and directors; absence of corporate records; and the fact that the corporation is merely a facade, are all relevant factors to be considered. *See e.g., id*. North Carolina courts recognize the equitable nature of alter ego theory, and, as a result, they do not focus on the presence or absence of a particular factor, but instead apply the doctrine flexibly to avoid injustice and unfairness. *Avanti Hearth Prod., LLC v. Janifast, Inc.*, No. 3:10-CV-00019-FDW, 2010 WL 3081371, at *5 (W.D.N.C. Aug. 6, 2010).

In *Saniri v. Christenbury Eye Center, P.A.*, a very similar case, the plaintiff alleged that Dr. Christenbury owned, operated, and controlled the corporation; referred to himself as a "God" of LASIK during staff meetings; had been fraudulently transferring and hiding corporate assets in anticipation of litigation; and had a pattern of using the corporate form to shield himself from personal liability for his unlawful acts. No. 3:17-cv-00474-FDW-DSC, at *7-8 (W.D.N.C. Dec. 5, 2017). This court held that there were sufficient facts alleged to deny defendants' Rule 12(b)(6) motion to dismiss to see what evidence was discovered to support plaintiff's claim. *Id*.

The court should do the same here, as Defendant Mari's behavior is very similar to that of Dr. Christenbury. Defendant Mari does whatever he wants, without regard to the Sorrento, LLC corporate entity. There is extensive documentation of Plaintiff Muja being unlawfully sexually harassed by Defendant Mari throughout the Complaint. *Id*. at ¶¶ 12, 14, 16, 19, 22-24. Defendant Mari also yelled at, slapped, pushed, pulled the hair of, and held a knife to, Plaintiff Muja. *Id*. at ¶¶ 49-55. Plaintiff Muja strongly believed the Defendant Mari's actions against both her and other employees violated the NC OSH Act. *Id*. at ¶ 51.

Plaintiff Muja also strongly believes that Defendant Mari was abusing the corporate form

6

for financial gain, including in violation of the NC Wage & Hour Act. Specifically, Defendant Mari did not pay Plaintiff Muja her full wages (including overtime at the 1.5x rate), nor did Defendant Mari pay Plaintiff Muja's state and federal taxes as she had instructed on her start-of-employment tax forms. *Id*. at ¶¶ 56, 57. Plaintiff Muja strongly believes that Defendant Mari used that money to benefit both himself (e.g., nice home, Porsche, rental properties, luxury personal items, and gifts for female employees) and Defendant Sorrento, LLC (e.g., payment for illegal immigrant employees), which includes Defendant Mari and Ladonea. *Id*. at ¶¶ 4, 58-60. It is also possible that Defendant Mari's displays of sexual favoritism, including things like money, gifts (e.g., manicures, pedicures, and a Honda Accord sports car), offer for legal immigration status, and offer for lodging were being paid with corporate funds and write-offs. *Id*. at ¶ 27-31.

Defendant Mari and co-owner Ladonea were and are the only owners of Defendant Sorrento and, at all times relevant, they exercised full and actual control over all aspects of its operations. *Id*. at ¶ 4. Understandably, co-owner Ladonea is afraid of Defendant Mari and does not take effective action to stop Defendant Mari's misconduct. *Id*. at ¶ 46. So, as Defendant Mari stated to Plaintiff Muja, "This is my restaurant. I do what the fuck I want." *Id*. at ¶ 65.

In conclusion, there are more than sufficient facts in the Complaint to support the possibility of holding Defendant Mari individually liable under Title VII, when applying the alter-ego theory to pierce the corporate veil. Defendant Mari dominates and controls Defendant Sorrento and imposing such individual liability against him will be needed to avoid injustice and unfairness. Plaintiff also strongly believes that the discovery process will produce addition facts to support her position. Accordingly, the court should deny Defendants' motion and allow the Title VII claim to proceed against Defendant Mari in his individual capacity.

### B. Plaintiff Muja Adequately Named Defendant Mari in Her EEOC Charge and Her Title VII Claim Against Him Should be Permitted to Proceed.

Plaintiff Muja mostly agrees with Defendants' legal analysis in this section. Specifically, that an administrative charge against the respondent must be filed with the EEOC before a Title VII complaint can be filed in court. However, Plaintiff Muja adamantly disagrees with Defendants' argument that, just because Defendant Mari's name was not specifically written in the "Name" box in the charge, she is barred from bringing this Title VII complaint against him in his individual capacity. Courts, including the 4th Circuit Court of Appeals, have agreed.

In *Saniri*, a very similar case, this court rejected Defendants' argument. *See* No. 3:17-cv-00474-FDW-DSC, at *4-6. This court held that "[a]n EEOC charge must sufficiently describe the alleged discriminatory acts and identify the accused parties so as to (1) notify the EEOC and the employer of the scope of the allegations and (2) provide an opportunity for voluntary compliance." *Id.*, citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508-510 (4th Cir. 2005). Further, "Title VII does not require procedural exactness … [and] courts often construe the naming requirement liberally." *Id. See also Kouri v. Todd*, 743 F. Supp. 448, 451 (E.D. Va. 1990) (citing *Alvarado v. Board of Trustees*, 848 F.2d 457, 460 (4th Cir. 1988)). In *Saniri*, this court held that, even though Dr. Christenbury's name was not included in the "Name" box, the plaintiff had properly filed an EEOC charge (and exhausted administrative remedies) against Dr. Christenbury in his individual capacity because his name was mentioned multiple times in the charge's allegations and his conduct was the focus of the charge. *Id*. at 5.

This was exactly the case here. Plaintiff Muja mentioned Defendant Mari by name multiple times in her EEOC charge, and his conduct was the focus of the charge. *See* D.E. 1 and Compl. at ¶ 74. Accordingly, the court should deny Defendants' motion and allow Plaintiff Muja's Title VII claim to proceed against Defendant Mari in his individual capacity.

### C. Plaintiff Muja's Complaint Alleges Sufficient Facts to Demonstrate Defendants' Sexual Harassment Altered the Terms, Conditions, or Privileges of Employment.

In light of the severity, nature, and duration of the obviously severe and pervasive sexual harassment of Plaintiff and details of the harm she has suffered described in the Complaint, it is surprising that Defendants made this argument. This also involves a question of fact more appropriately reserved for a motion for summary judgment. Nonetheless, Plaintiff Muja responds.

Title VII provides, in relevant part, that an employer shall not discriminate against an employee with respect to a term, condition, or privilege of employment based on sex. 42 U.S.C. § 2000e-2(a)(1). In their Motion for Partial Dismissal, Defendants appear to argue that "terms and conditions" (omitting "privileges") include only tangible or economic aspects of employment, such as compensation, termination, inability to perform job duties, and the like. Their argument was specifically rejected by the U.S. Supreme Court in *Meritor Savings Bank v. Vinson*, a case cited by Defendants in their Memorandum of Law. *See* 477 U.S. 57, 64 (1986). In *Meritor Savings Bank*, the Court held that Title VII's phrase "terms, conditions, and privileges of employment" covers "the entire spectrum of disparate treatment of men and women" in employment. *Id*.

It is widely recognized that Title VII "affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id*. at 65, citing *Rogers v. E.E.O.C.,* 454 F.2d 234 (CA5 1971), cert. denied, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). Citing EEOC Guidelines, the Court further stated in *Meritor Savings Bank* that sexual harassment need not cause economic injury or unreasonably interfere with an employee's performance to violate Title VII. *Id*. at 65. "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" are all actionable, provided they are either severe or pervasive. *Id*., citing 29 CFR § 1604.11(a) (1985). The Court, referencing EEOC Guidelines, stated that such sexual misconduct constitutes prohibited "sexual harassment,"

whether or not it is directly linked to the grant or denial of an economic *quid pro quo,* where "such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." *Id.*, citing § 1604.11(a)(3) (emphasis added). The altered work environment can, in fact, consist only of emotional or psychological harm to the plaintiff. *Id*. at 66.

Therefore, disparate treatment based on sex (which includes sexual advances, requests for sexual favors, sexual comments, etc.) implicitly alters the terms, conditions, or privileges of employment if they are either severe or pervasive. *See generally id*. Courts have consistently held that a singular sexual comment, while subjectively offensive, is not sufficiently severe or pervasive to alter the terms, conditions, or privileges of employment. *See, e.g., Rogers v. E.E.O.C.*, *supra*, at 238. *See also Meritor Savings Bank*, 477 U.S. at 67 (discussing the use of racial epithets, to which the same analysis applies to sexual comments for Title VII purposes). On the other hand, the U.S. Supreme Court stated in Meritor that sexual misconduct that is not only pervasive but criminal in nature is certainly "hostile environment" sexual harassment that altered terms, conditions, and privileges of employment. *Meritor Savings Bank*, 477 U.S. at 67.

Further, Title VII imposes liability when a supervisor shows sexual favoritism toward multiple paramour-employees when the display of favoritism, though uncoerced, is withheld from qualified employees who do not submit to the supervisor's sexual advances or requests for sexual favors. 29 C.F.R. § 1604.11(g). *See also Piech v. Arthur Andersen & Co., S.C.*, 841 F.Supp. 825 (N.D. Ill. 1994); *Broderick v. Ruder, 685 F.Supp. 1269* (D. D.C. 1988). These cases demonstrate an overlap of *quid pro quo* and "hostile environment" sexual harassment.

There is no doubt that Plaintiff Muja's Complaint alleges sexual harassment that was sufficiently severe and pervasive to alter the terms, conditions, and privileges of her employment.

Mr. Chicas repeated groped Plaintiff's vagina over her clothes without consent. Compl. at ¶ 19. This, alone, is sexual misconduct that is pervasive and criminal in nature that the U.S. Supreme Court stated in *Meritor Savings Bank* alters the terms, conditions, and privileges of employment. *Meritor Savings Bank*, 477 U.S. at 67. But this was not all. Defendant Mari and Mr. Chicas made repeated sexual advances toward, and requested sexual favors of, Plaintiff Muja. She instructed them to stop on multiple occasions, but the sexual harassment continued unabated. *Id.* at ¶¶ 22-24. Defendant Mari and Mr. Chicas also routinely called Plaintiff Muja derogatory sexual terms, like "Bitch" and "Cunt", and asked her questions about her sexual history. *Id.* at ¶¶ 14, 16. Defendant Mari showed favoritism toward female employees who did not reject his sexual advances in the form of preferential treatment, money, gifts, and offers to pay for lodging and legal immigration status. For one who had sex with him, he bought her a sports car. When she stopped having sex with him, he threated to terminate her unless she returned the car. *Id.* at ¶ 29. Female employees who did not consent or tolerate such sexual advances (i.e., victims of sexual harassment), including Plaintiff Muja, were treated differently – Like "lowly servants" and "worthless object[s]." *Id.* at ¶¶ 35, 50. As a result, Plaintiff Muja has suffered extensive physical and emotional harm. *Id.* at ¶¶ 66-72. Defendant Sorrento is the definition of a hostile environment.

To the extent Plaintiff Muja is required to respond now (as opposed to a more appropriate motion for summary judgment), the detailed allegations set forth in Plaintiff Muja's Complaint exceed the "facially plausible" standard to survive Defendants' Motion for Partial Dismissal. Defendants' motion must be denied.

### D. Plaintiff Muja Did Not Assert a Wrongful Discharge in Violation of Public Policy Claim Against Defendant Mari in His Individual Capacity.

Defendants' basis for making this argument is unclear, as there is no such claim to dismiss.

### E. Plaintiff Muja Sufficiently Stated a Claim Against All Defendants for Violation of the Retaliatory Employment Discrimination Act (REDA), Because Plaintiff Muja was Investigating Ongoing Workplace Safety Hazards Under the Occupational Safety and Health Act of North Carolina (NC OSHA).

REDA, in relevant part, provides that "[n]o person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to … [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to … Article 16 of this Chapter[,]" NC OSHA, or the North Carolina Wage & Hour Act. N.C. Gen. Stat. § 95-241(a) (2011). To establish a *prima facie* case under REDA, a plaintiff must show "(1) that he exercised his rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen. Stat. § 95-241(a)." *Wiley v. United Parcel Service, Inc.*, 164 N.C. App. 183, 186, 594 S.E.2d 809, 811 (NC App. 2004).

Defendants essentially argue that Plaintiff Muja's REDA claim fails for three reasons: (1) Plaintiff Muja was not engaged in protected activity because she was only making an internal complaint or talking to an internal supervisor or manager about potential safety concerns, which is not "protected activity" under REDA; (2) she did not make an external written complaint to a government agency nor threaten to do so; and (3) she was not terminated for engaging in "protected activity", which causation was unsupported by close temporal proximity between the "protected activity" and the termination. In short, Defendants argue that Plaintiff Muja does not allege that any "protected activity" under REDA was a substantial factor in her termination. *See Wiley v. United Parcel Service, Inc.*, 102 F.Supp.2d 643, 650 (1999).

Defendants correctly point out that courts have generally held that casual internal complaints about potential safety concerns to a manager are not protected activity under REDA.

However, Defendants' argument would mislead one to mistakenly believe that internal complaints are never protected under REDA and that Plaintiff Muja's verbal complaint to co-owner Ladonea nine months before her termination was the only protected activity in which she engaged. In fact, both beliefs would be wrong.

The Fourth Circuit Court of Appeals held that "[i]nternal complaints alleging ongoing NC OSHA violations, like the ones in *Bigelow* and *Jurrissen* (and unlike the one in *Pierce*, where the plaintiff proposed a way to comply with new safety rules but didn't allege any ongoing violations), can be protected. In assessing whether a particular complaint is protected, we should also consider: whether it relates or leads to an investigation, *see Pierce*, 724 S.E.2d at 575; whether it's made to someone other than the plaintiff's "supervisors or managers," *see id.*; and whether workplace safety is a primary focus of the complaint, *see Delon*, 367 F. Supp. 2d at 902." *Driskell v. Summit Contracting Group, Inc.*, No. 19-1497, 3:16-cv-00819-FDW-DCK, at *16-17 (4th Cir. Sept. 24, 2020), citing *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 745 S.E.2d 316 (N.C. App. 2013); *Jurrissen v. Keystone Foods*, *LLC*, No. 1:08-CV-128, 2008 WL 3925086, at *5-6 (M.D.N.C. Aug. 20, 2008).

In *Bigelow*, for example, the plaintiff alleged that he was terminated for photographing and complaining about unsafe working conditions, which is covered by NC OSHA's express purpose of protecting employee health and safety. In *Bigelow*, the North Carolina Court of Appeals specifically noted that retaliatory discrimination is prohibited as against public policy "to ensure that employees are not discouraged from reporting violations of [NC OSHA]." 227 N.C. App. at 13.

Plaintiff Muja was engaged in essentially the same protected activity as the plaintiff in *Bigelow*. Plaintiff Muja and other employees had been subjected to workplace safety hazards

13

caused by Defendants. This included sexual harassment, physical and verbal abuse, threatening her with a knife, and other similar hazards. Compl. at ¶¶ 12, 15, 18, 19, 38, 42, 49, 52, 53, 55. Plaintiff Muja believed the Defendants were violating the law, including NC OSHA. *Id*. at ¶¶ 51. Plaintiff Muja complained, not to a mere supervisor or manager, but to co-owner Ladonea (the only owner not engaged in the violation), on multiple occasions. *Id*. at ¶¶ 38, 47, 53, 61. In response, co-owner Ladonea instructed Plaintiff Muja to begin an investigation into the above workplace hazards involving Defendant Mari and to document them. *Id*. at ¶¶ 40, 42. On or about December 17, 2023, Defendant Mari was having an angry confrontation with a young female employee. To document evidence of sexual harassment and physical safety issues, as instructed, Plaintiff Muja video-recorded the incident. *Id*. at ¶ 61. The next day, Defendant Mari saw the video and terminated Plaintiff Muja on the spot for making it. When Plaintiff Muja told him he could not fire her for making the video, he stated, "This is my restaurant. I do what the fuck I want." *Id*. at ¶¶ 63-66.

Plaintiff Muja's multiple complaints and investigation into workplace safety hazards were protected activity under REDA. It was evident, based on the nearly contemporaneous temporal proximity of Defendant Mari watching the evidence she had collected and terminating her, that Defendants' termination of Plaintiff Muja was unlawful retaliation based on her NC OSHA investigation in violation of REDA. Regardless, Plaintiff Muja has provided sufficient evidence in her Complaint to raise the possibility of such a violation. Accordingly, the court should deny Defendants' motion and allow this claim to proceed.

For the purpose of holding Defendant Mari individually liable under REDA, Defendants do not argue that REDA prohibits individual liability. Plaintiff Muja, therefore, incorporates by reference her arguments in sections III(a)-(b) of this response brief for piercing the corporate veil

to impose such individual liability on Defendant Mari for the purpose of serving justice and avoiding unfairness.

### F. Plaintiff Muja Did Not Assert a Civil Assault or Battery Claim Against Defendant Mari in His Individual Capacity.

Defendants' basis for making this argument is unclear, as there is no such claim to dismiss.

### G. Plaintiff Muja Sufficiently Stated a Claim for Negligence Against All Defendants.

Defendants essentially argue that the North Carolina Workers' Compensation Act bars all common law negligence claims against employers and co-workers for all physical and mental injuries that occur in the course of employment. The only exception to this "exclusivity provision" of the Act, Defendants argue, is intentional misconduct that is substantially certain to cause serious injury or death, where the employee is either injured or killed by that misconduct. *See Woodson v. Rowland*, 329 N.C. 330, 340-41, 407 S.E.2d 222, 228 (1991). Defendants argue that no such intentional misconduct was alleged against Defendant Sorrento in Plaintiff Muja's Complaint. Defendants' overstatement of the breadth of the Workers' Compensation Act and omission of the proper legal test led to the wrong conclusion. Their motion to dismiss this claim should be denied.

In their motion, Defendants state that the Workers' Compensation Act's exclusivity provision "bar[s] a worker from maintaining a common law negligence action against his employer" for injuries sustained in the course of his employment." *Pleasant v. Johnson*, 312 N.C. 710, 713, 325 S.E.2d 244, 247 (1985). However, Defendants cherry-picked a sentence from *Pleasant* without citing the full legal test. In North Carolina, courts apply the "applicability test" to determine whether an injury falls under the exclusivity provision of the Workers' Compensation Act. *See Marlow v. TCS Designs, Inc.*, 288 N.C. App. 567, 570, 887 S.E.2d 448, 452 (2023) (establishing the test). Under the applicability test, to fall within the Act, an injury must (1) be caused by an accident, (2) occur in the course of employment, <u>and</u> (3) arise out of

the employment. *Id*. (emphasis added). Elements (1) and (3) are not met.

With regard to element (1) of the test, Defendants' actions were not accidental. While the stated claim is negligence, the appropriate legal analysis examines the underlying actions of sexual harassment, assault, and battery. *See Alderete v. Sunbelt Furniture Xpress, Inc.*, 901 S.E.2d 865, 869 (N.C. Ct. App. 2024). Assault and battery are, as Defendants point out in section (F) of their Memorandum of Law, intentional torts. The North Carolina Supreme Court also held that sexual harassment is an intentional tort. *Medlin v. Bass*, 327 N.C. 587, 594, 398 S.E.2d 460, 464 (1990).

With regard to element (3) of the test, Defendants' actions did not arise out of Plaintiff's employment. As Defendants argue in section (F) of their Memorandum of Law, "intentional tortious acts are rarely considered to be within the scope of an employee's employment." *Medlin*, 327 N.C. at 594, 398 S.E.2d at 464 (internal brackets and citation omitted). Rather, when an intentional tortious act such as an assault occurs at the workplace but "the assault was not for the purpose of doing anything related to the duties of the employee, but was for some undisclosed, personal motive[,] [i]t cannot, therefore, be deemed an act of his employer." *Id.* (internal brackets, ellipses, and citation omitted). As Defendants further point out in section (F) of their Memorandum of Law, "nothing in Plaintiff's Complaint indicates that Defendant Mari's alleged conduct was committed in furtherance of Sorrento's business." That is because Defendant Mari's sexual harassment, assault, and battery were not in furtherance of the business – They were personal. For these reasons, Defendants' "egregious" conduct falls outside of the Workers' Compensation Act and their motion to dismiss Plaintiff's negligence claim should be denied on the merits.

Defendants' motion should also be denied for procedural reasons. The trial-level court is "a court of general jurisdiction and has jurisdiction in all actions for personal injuries caused by

16

negligence, except where its jurisdiction is divested by statute." *Morse v. Curtis,* 276 N.C. 371, 374-75, 172 S.E.2d 495, 498 (1970), citing N.C. Gen. Stat. § 7A-240. "The Industrial Commission is not … It is an administrative board with quasi-judicial functions and has a special or limited jurisdiction created by statute and confined to its terms. *Letterlough v. Akins*, 258 N.C. 166, 168, 128 S.E.2d 215, 217 (1962), citing *Hart v. Thomasville Motors, Inc.*, 244 N.C. 84, 89, 92 S.E.2d 673, 677 (1956). The party invoking the jurisdiction of a court of limited jurisdiction bears the burden of proving that jurisdiction. *See, e.g., State v. Sellers*, 248 N.C. App. 293, 300, 789 S.E.2d 459, 465 (2016) ("In a trial or appellate court setting, the burden of establishing jurisdiction is placed upon the party seeking to invoke the trial court's jurisdiction."); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the jurisdiction of a court of] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *McNutt v. Gen. Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 188-89 (1936) (holding that the party invoking jurisdiction of the court must plead and prove facts that support jurisdiction).

Defendants appear to argue that the Industrial Commission, rather than this Court, has jurisdiction for Plaintiff Muja's negligence claim. Defendants bear this burden of proof, but they have not filed an Answer or plead any facts, let alone those proving that the Industrial Commission has limited jurisdiction over this claim. Since Defendants admit in their motion that there is at least one exception to the "exclusivity provision", this Court should deny Defendants' motion and require them to prove that jurisdiction lies outside of this court.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Dismissal should be denied and Plaintiff Muja's claims allowed to proceed.

17

This the 19th day of December, 2024.

*/s/ Ian McRary*

Ian M. McRary
State Bar No. 43057

McRary Law
231 Government Avenue SW, #1094
Hickory, NC 28603
Phone: (828) 235-5551
Email: ian@mcrarylaw.com

Jacob Modla
State Bar No. 17534

Cromer, Babb & Porter
P.O. Box 11675
Columbia, SC 29211
Phone: (803) 799-9530
Email: jake@cromerbabb.com

**ATTORNEYS FOR THE PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Memorandum in Support of Plaintiff's Response to Defendants' Motion for Partial Dismissal was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send notification to the following:

>Kevin V. Parsons, NC State Bar No. 19226
>Margaret Taviano, NC State Bar No. 61506
>Lewis Brisbois Bisgaard & Smith LLP
>521 East Morehead Street, Suite 250
>Charlotte, North Carolina 28277
>Kevin.Parsons@lewisbrisbois.com
>Margaret.Taviano@lewisbrisbois.com

This the 19th day of December, 2024.

_/s/ Ian McRary_

Ian M. McRary
State Bar No. 43057

McRary Law, PLLC
231 Government Avenue SW, #1094
Hickory, NC 28603
Phone: (828) 235-5551
Email: ian@mcrarylaw.com

Jacob Modla
State Bar No. 17534

Cromer, Babb & Porter
P.O. Box 11675
Columbia, SC 29211
Phone: (803) 799-9530
Email: jake@cromerbabb.com

**ATTORNEYS FOR THE PLAINTIFF**