# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO.  5:24-CV-221-KDB-DCK

| | | |
|---|---|---|
| ADRIANA MUJA, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| SORRENTO, LLC d/b/a SORRENTO'S | ) | |
| ITALIAN RESTAURANT & PIZZERIA, | ) | |
| and  ANTONIO MARI (Individually), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss" (Document No. 4).  This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and is now ripe for disposition.  Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>denied</u> with respect to Plaintiff's Title VII sexual harassment claim against both Defendants, Plaintiff's claim for violation of the Retaliatory Employment Discrimination Act against both Defendants, and Plaintiff's negligence claim against both Defendants;  and <u>denied as moot</u> with respect to any claim of wrongful discharge in violation of public policy against Defendant Mari and any claims of civil assault and battery against Defendant Sorrento.

## I.  BACKGROUND

Plaintiff Adriana Muja ("Plaintiff" or "Muja") filed her "Complaint" (Document No. 1) against Defendants Sorrento, LLC ("Sorrento") and Antonio Mari ("Mari") on October 10, 2024. The Complaint alleges (1) sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII");  (2) wrongful discharge in violation of North Carolina public policy ("WDPP");

(3) violation of the Retaliatory Employment Discrimination Act ("REDA"); (4) civil assault; (5) civil battery; (6) intentional or reckless infliction of emotional distress; (7) violation of the North Carolina Wage and Hour Act; (8) civil conversion; (9) negligence; and (10) punitive damages.[1] (Document No. 1, pp. 13-19).

The Complaint alleges that Defendant Sorrento, d/b/a Sorrento's Italian Restaurant & Pizzeria, hired Plaintiff as a full-time manager on or about June 20, 2021. (Document No. 1, p. 3). Defendant Mari and Antonio P. Ladonea ("Ladonea") co-owned Sorrento. Id. at p. 2. Plaintiff worked at Sorrento under Defendant Mari's supervision until he terminated her employment on or about December 18, 2023. Id. at p. 11.

According to the Complaint, "[w]ithin a couple months of being hired, Defendant Antonio Mari and Erik Chicas, a manager at Sorrento's, engaged in a relentless campaign of sexual harassment against Plaintiff Muja." (Document No. 1, p. 3). Plaintiff alleges several ways in which Defendant Mari and Erik Chicas ("Chicas") harassed her, including: making "repeated degrading sexual comments directed at Plaintiff Muja"; calling Plaintiff Muja by derogatory terms; and "repeatedly grop[ing] Plaintiff Muja in a sexual manner, including groping her breasts and her butt." Id. at p. 4. Plaintiff also alleges that Defendant Mari offered her "money for sex" on "multiple occasions." Id. at p. 3. Plaintiff "never consented" to Mari's and Chicas's sexual harassment, and she "clearly and directly informed [them] that their behavior was inappropriate and unwelcome, instructing them to stop," but the two men "continued their sexual harassment unabated." (Document No. 1, p. 4).

Plaintiff's Complaint states that "[u]pon information and belief, Defendant Mari solicited sexual activity and sexual photos from multiple female employees of Defendant Sorrento's in

---

[1] Plaintiff appears to assert her fourth, fifth, and sixth causes of action against Defendant Mari only.

exchange for money, gifts…and favoritism.  The sex often occurred in the restaurant."  Id. at p. 5.

Co-owner Ladonea "removed the door from Defendant Mari's office" after "receiving a complaint

about Defendant Mari having sex with a female employee of Defendant Sorrento's in his

restaurant-based office."  Id. at p. 6.

According to the Complaint, Defendant Mari also purchased a sports car for a female

employee named K.M. "in exchange for sex" and "offered an immigration work visa sponsored

by Defendant Sorrento's to a female employee named E.V. if she had sex with him."  Id. at p. 5.

Thus, Plaintiff alleges that "[i]n addition to hostile environment sexual harassment, Defendant

Mari repeatedly engaged in (and attempted to engage in) *quid pro quo* sexual harassment with

female employees."  Id. at p. 6.  Plaintiff "wanted to quit" but "needed the money to support her

family."  Id.

Plaintiff also "believed Defendants violated the law, including the [North Carolina

Occupational Safety and Health] Act" and "complained to co-owner Ladonea about the sexual

harassment, retaliation, and workplace hazards (including physical and verbal abuse) occurring at

Defendant Sorrento's."  (Document No. 1, pp. 7, 8).  "In response to Plaintiff Muja's complaint,

Ladonea instructed Plaintiff Muja to document the issues.  In effect, Ladonea placed the heavy and

potentially hazardous burden of investigation on the complainant."  Id.

The Complaint alleges that in 2023, Plaintiff "respectfully raised her concerns with

Defendant Mari about the hostile work environment," and he "blew up."  (Document No. 1, p. 8).

Thereafter, according to the Complaint, Defendant Mari "began physically assaulting Plaintiff

Muja at work.  Defendant Mari slapped and pushed Plaintiff Muja, as well as pulled her hair, on

multiple occasions at work."  Id.  In March 2023, "Defendant Mari pulled out a sharp kitchen knife

and held it to Plaintiff Muja's face, threatening her."  Id. at p. 9.  The Complaint indicates that a

co-worker witnessed this incident. <u>Id.</u> "As a result" of this incident, Plaintiff "developed severe anxiety, fear, and panic attacks." <u>Id.</u>

The Complaint alleges that on or about December 17, 2023, Plaintiff "went to the restaurant to speak with Defendant Mari about pay-related issues that [she] had recently discovered." (Document No. 1, p. 9). When Plaintiff arrived, "Defendant Mari was having an angry confrontation with a young female waitress," and Plaintiff video-recorded the incident "[t]o document evidence of the sexual harassment and physical safety issues, as Ladonea had instructed her to do." <u>Id.</u> at p. 10. "The video captured Defendant Mari screaming at the young female waitress, cursing, and [waving] his hands." <u>Id.</u> According to the Complaint, Defendant Mari's wife was nearby, and after Plaintiff asked her "whether she was going to let Defendant Mari act that way," Defendant Mari's wife "responded in Spanish, yes, because she (the wife) did not want to die." <u>Id.</u> at pp. 10-11. Plaintiff "started having another panic attack and left" without talking to Defendant Mari. <u>Id.</u> at p. 11.

The Complaint alleges that the next day, when Plaintiff Muja arrived at work, Defendant Mari "demanded" to see the video recording, and after watching it, "Defendant Mari suddenly burst, 'Get the fuck out of my restaurant!'" (Document No. 1, p. 11). "Plaintiff Muja responded that Defendant Mari could not fire her for taking a video. Defendant Mari stated, 'This is my restaurant. I do what the fuck I want.'" <u>Id.</u> Defendant Mari terminated Plaintiff's employment on or about December 18, 2023. <u>Id.</u>

Plaintiff alleges that she was healthy before working for Defendants, but as a result of their wrongful conduct, she "has suffered serious, debilitating, and irreparable physical, mental, and emotional harm," including suffering from post-traumatic stress disorder and being "admitted to

the hospital multiple times for serious or combined symptoms." (Document No. 1, p. 12). Plaintiff has been unable to hold work and has experienced significant financial and family stress. Id.

Plaintiff timely filed claims with the North Carolina Department of Labor ("NCDOL") for "sex discrimination (sexual harassment), retaliation, workplace hazards, and wage and tax issues" and received a right-to-sue letter dated July 17, 2024. (Document No. 1, p. 12). Plaintiff also timely filed a "Charge Of Discrimination" (Document No. 10) ("EEOC Charge") with the United States Equal Employment Opportunity Commission ("EEOC") for "sex discrimination" and received a right-to-sue letter dated October 7, 2024. Id. Plaintiff filed her Complaint within ninety (90) days of receiving both letters. Id.

Defendants filed the pending "…Motion To Dismiss" (Document No. 4) on December 9, 2024. Plaintiff filed a "Response In Opposition to Defendants' Motion To Dismiss" (Document No. 6) on December 19, 2024, and Defendants filed their "Reply Brief In Support…" (Document No. 9) on January 2, 2025.

The pending motion has been fully briefed and is ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v.

American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

"Defendants' Motion To Dismiss" asks the Court to dismiss six of Plaintiff's ten causes of action pursuant to Fed.R.Civ.P. 12(b)(6): Title VII sexual harassment with respect to both Defendants, wrongful discharge in violation of public policy with respect to Defendant Mari, violation of the Retaliatory Employment Discrimination Act ("REDA") with respect to both Defendants, civil assault with respect to Defendant Sorrento, civil battery with respect to

Defendant Sorrento, and negligence with respect to both Defendants.  (Document No. 4-1).  The undersigned will discuss each of Defendants' arguments for dismissal below.

## A.  Title VII Sexual Harassment (First Cause of Action)

Defendants move to dismiss Plaintiff's Title VII claim against Defendant Mari by arguing (i) "there is no individual liability under Title VII," and (ii) Plaintiff "failed to exhaust her administrative remedies with respect to Defendant Mari" because she did not name him as a respondent in her EEOC Charge.  (Document No. 4-1, pp. 5-7).  Defendants further move to dismiss Plaintiff's Title VII claim against *both* Defendants by arguing Plaintiff's Complaint fails to make factual allegations about an altered work environment.  (Document No. 4-1, p. 8).

### i.      Individual Liability Under Title VII

Defendants first argue that Plaintiff's sexual harassment claim "must be dismissed as to Defendant Mari because there is no individual liability under Title VII."  (Document No. 4-1, p. 5) (citing <u>Lissau v. S. Food Serv., Inc.</u>, 159 F.3d 177, 180 (4th Cir. 1998)).  Defendants further argue that "Plaintiff's Complaint has not satisfied the requirements for piercing the corporate veil" because she has not alleged that Defendant Mari "fraudulently or unfairly 'used the corporate form.'"  (Document No. 4-1, pp. 5-6) (citing <u>Mayes v. Moore</u>, 419 F. Supp. 2d 775, 779-80 (M.D.N.C. 2006)).

In response, Plaintiff argues that "there are more than sufficient facts in the Complaint to support the possibility of holding Defendant Mari individually liable under Title VII, when applying the alter-ego theory to pierce the corporate veil."  (Document No. 6, p. 7).  Plaintiff asserts:

> A court may disregard the corporate form and impose individual liability under the alter-ego theory when (1) the shareholder dominates and controls the organization and (2) imposing such liability is needed to avoid injustice or fundamental unfairness.

> Mayes, 419 F. Supp. 2d at 781. Courts have found that fraud; gross
> undercapitalization; failure to observe corporate formalities;
> siphoning of the corporation's funds; non-functioning of officers
> and directors; absence of corporate records; and the fact that the
> corporation is merely a facade, are all relevant factors to be
> considered. See, e.g., id.

(Document No. 6, p. 6).

Plaintiff argues that her case is like Saniri v. Christenbury Eye Center, P.A., in which this

Court "held that there were sufficient facts alleged to deny defendants' Rule 12(b)(6) motion to

dismiss to see what evidence was discovered to support plaintiff's claim." Id. (citing No. 3:17-

CV-474-FDW-DSC, 2017 WL 6028360, at *7-8 (W.D.N.C. Dec. 5, 2017)). In Saniri, the plaintiff

alleged:

> [The individual defendant] owned, operated, and controlled the
> corporation; referred to himself as a "God" of LASIK during staff
> meetings; had been fraudulently transferring and hiding corporate
> assets in anticipation of litigation; and had a pattern of using the
> corporate form to shield himself from personal liability for his
> unlawful acts.

Id. (citing Saniri, 2017 WL 6028360, at *7-8).

Plaintiff asserts that like the individual defendant in Saniri, "Defendant Mari does whatever

he wants, without regard to the Sorrento, LLC corporate entity." (Document No. 6, p. 6). Plaintiff

asserts her belief "that Defendant Mari was abusing the corporate form for financial gain, including

in violation of the NC Wage & Hour Act." (Document No. 6, pp. 6-7). She details examples of

what might constitute such behavior:

> Defendant Mari did not pay Plaintiff Muja her full wages…, nor did
> Defendant Mari pay Plaintiff Muja's state and federal taxes as she
> had instructed on her start-of-employment tax forms. [(Document
> No. 1, pp. 9-10).] Plaintiff Muja strongly believes that Defendant
> Mari used that money to benefit both himself (e.g., nice home,
> Porsche, rental properties, luxury personal items, and gifts for
> female employees) and Defendant Sorrento, LLC (e.g., payment for
> illegal immigrant employees), which includes Defendant Mari and

> Ladonea.  Id. at [pp. 2, 10].  It is also possible that Defendant Mari's displays of sexual favoritism…were being paid with corporate funds and write-offs.  Id. at [p. 5].

Id. at pp. 6-7 (citing Document No. 1, pp. 5-10).  Plaintiff argues that imposing individual liability on Defendant Mari "will be needed to avoid injustice and unfairness," and she asserts a "strong[] belie[f] that the discovery process will produce addition[al] facts to support her position." (Document No. 6, p. 7).

In their Reply, Defendants assert that "[t]he allegations in Plaintiff's Amended Complaint fail to meet th[e] standard" for piercing the corporate veil.  (Document No. 9, p. 2).  Defendants argue that the factual allegations about Defendant Mari's behavior are *not* like those in Saniri because unlike in Saniri, "there are no factual allegations that Defendant Mari was fraudulently transferring and/or hiding corporate assets in anticipation of litigation," and "there are no factual allegations that Defendant Mari has ever used the corporate form to shield himself from personal liability for unlawful acts."  Id. at pp. 2-3 (citing Saniri, 2017 WL 6028360 at *4).  Defendants contend that "Plaintiff merely speculates, without providing any factual allegations in her Complaint, that she believes Defendant Mari[] allegedly 'misappropriated' her earned wages and tax withholdings for personal use."  (Document No. 9, p. 3) (citing Document No. 1, p. 10).

Viewing the facts in the most favorable light to Plaintiff, the undersigned is persuaded that Plaintiff has alleged enough to proceed at this stage with her Title VII claim against Defendant Mari under a corporate veil piercing theory.  "If after discovery, however, the evidence indicates that piercing the corporate veil is not appropriate, then Plaintiff's Title VII claim against [Defendant Mari] would be subject to dismissal at that time."  Saniri, 2017 WL 6028360 at *4.

### ii. Naming Requirements for Plaintiff's EEOC Charge

Defendants next argue an alternative basis for dismissal of Plaintiff's Title VII claim against Defendant Mari: Plaintiff "failed to exhaust her administrative remedies with respect to Defendant Mari" because "Defendant Mari is not named as a respondent in Plaintiff's EEOC charge." (Document No. 4-1, p. 7). Defendants contend that a civil action following an EEOC charge is only allowed "against the respondent(s) named in the charge"—in this case, Defendant Sorrento. Id. (citing Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998)).

In response, Plaintiff contends that "Title VII does not require procedural exactness…[and] courts often construe the naming requirement liberally." (Document No. 6, p. 8) (quoting Saniri, 2017 WL 6028360 at *4-6). Plaintiff again analogizes to Saniri, in which this Court recognized an exception to the naming requirement. Id. (citing Saniri, 2017 WL 6028360 at *5). Plaintiff asserts that "[a]n EEOC charge must sufficiently describe the alleged discriminatory acts and identify the accused parties so as to (1) notify the EEOC and the employer of the scope of the allegations and (2) provide an opportunity for voluntary compliance." Id. (quoting Saniri, 2017 WL 6028360 at *2).

Plaintiff asserts that in Saniri, this Court held that because the unnamed individual defendant "was mentioned multiple times in the charge's allegations and his conduct was the focus of the charge," the "plaintiff had properly filed an EEOC charge (and exhausted administrative remedies) against [the defendant] in his individual capacity." (Document No. 6, p. 8). Plaintiff argues that "[t]his was exactly the case here." Id.

In their Reply, Defendants acknowledge the "'substantial-identity exception' which allows unnamed respondents in the EEOC charge to be held liable in civil actions where they have been given adequate notice by the administrative charge." (Document No. 9, p. 4) (citing McDaniel v.

Greyhound Lines, Inc., No. 3:08-CV-130-FDW, 2008 WL 2704774, at *7-8 (W.D.N.C. July 7, 2008)). But Defendants argue that "the mere mention of a defendant's name in a charge of discrimination is not dispositive of the substantial-identity exception." (Document No. 9, p. 4) (citing McDaniel, 2008 WL 2704774 at *8-9).

This Court considers four factors relevant to the "substantial-identity exception":

> (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

McDaniel, 2008 WL 2704774 at *3 (citing Mayes v. Moore, 419 F.Supp.2d 775, 783 (M.D.N.C. 2006)).

The undersigned is persuaded that here, as in Saniri, the substantial identity exception may fairly apply such that Defendant Mari was not prejudiced. See Saniri, 2017 WL 6028360 at *2-3.

### iii. Factual Allegations of an Altered Work Environment

Defendants next argue that "[t]he lack of any facts pled to support any rational inference that Plaintiff actually experienced an alteration in her work environment requires dismissal of her Title VII sexual harassment claim." (Document No. 4-1, p. 9). Defendants assert that "[a]n actionable Title VII claim must allege facts demonstrating the work environment was characterized by offensive conduct 'because of sex…' that is both severe and pervasive." Id. at p. 8 (citing Meritor Savings Bank v. Vinson, 477 U.S. 57, 67-68 (1986)). Defendants contend that

Plaintiff must "show the allegedly offending conduct actually altered conditions of her work environment." Id. (citing Pueschel v. Peters, 577 F.3d 558, 565-66 (4th Cir. 2009)).

Defendants assert that "Plaintiff does not even conclusorily allege her workplace was so altered she was impaired in performing her job." (Document No. 4-1, p. 8) (citing Meritor Savings Bank, 47 U.S. at 67). Defendants contend that "Plaintiff admits she stayed employed by Sorrento's for about 2.5 years after the first alleged act of harassment without any impediments to performing her job duties" and "claims to have continued to work for Sorrento's for 9 months after allegedly having been threatened with a knife all while still performing her job duties without impediment." (Document No. 4-1, pp. 8-9) (citing Document No. 1, pp. 9, 11).

In response, Plaintiff asserts, "[i]n light of the severity, nature, and duration of the obviously severe and pervasive sexual harassment of Plaintiff and details of the harm she has suffered described in the Complaint, it is surprising that Defendants made this argument." (Document No. 6, p. 9). Plaintiff also contends that this "involves a question of fact more appropriately reserved for a motion for summary judgment." Id. Plaintiff then addresses relevant caselaw and references several allegations in her Complaint in support of her contention that "Defendant Sorrento is the definition of a hostile environment." Id. at pp. 9-11 (citing Meritor Savings Bank, 477 U.S. 57; Rogers v. E.E.O.C., 454 F.2d 234 (5th Cir. 1971); Piech v. Arthur Andersen & Co., S.C., 841 F. Supp. 825 (N.D. Ill. 1994); Broderick v. Ruder, 685 F. Supp. 1269 (D.D.C. 1988); (Document No. 1, pp. 3-12)).

In their Reply, Defendants "simply argue that there is a lack of facts pled to support any rational inference that Plaintiff actually experienced an alteration in her work environment as a result of sexual harassment." (Document No. 9, p. 5) (citing Document No. 4-1, p. 9).

The undersigned finds Plaintiff's arguments persuasive and agrees that whether Plaintiff experienced an altered work environment "involves a question of fact more appropriately reserved for a motion for summary judgment." (Document No. 6, p. 9). The undersigned will therefore respectfully recommend that Plaintiff's Title VII claim be allowed to proceed against both Defendants at this early stage of the litigation.

**B.  Wrongful Discharge in Violation of Public Policy (Second Cause of Action)**

Defendants move to dismiss Plaintiff's claim for wrongful discharge in violation of public policy ("WDPP") against Defendant Mari, arguing there is no individual liability under WDPP in North Carolina. (Document No. 4-1, p. 9) (citing Gibson v. Corning, Inc., 2015 WL 1880188, at *4 (E.D.N.C. Apr. 13, 2015); Johnson v. North Carolina, No. 5:11-CV-057-RLV-DCK, 905 F. Supp. 2d 712, 726 (W.D.N.C. 2012); Arbia v. Owens-Illinois, Inc., 2003 WL 21297330, at *7 (M.D.N.C. June 4, 2003); Hilderbrand v. Pelham Transp. Corp., 2021 WL 2681966, at *17-18 (M.D.N.C. June 30, 2021)).

In response, Plaintiff contends that she did not assert a WDPP claim against Defendant Mari in his individual capacity, so there is no such claim to dismiss. (Document No. 6, p. 11).

In Reply, Defendants assert "Plaintiff has conceded that her wrongful discharge in violation of public policy claim fails to state a claim against Defendant Mari." (Document No. 9, p. 6) (citing Brand v. N.C. Dep't of Crime Control and Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004)).

The undersigned finds this issue moot with respect to a WDPP claim against Defendant Mari in his individual capacity. Although the Complaint confusingly states that Plaintiff suffered damages "as a proximate result of Defendants' wrongful discharge of her employment," Plaintiff's Response clarifies that she did not assert a WDPP claim against Defendant Mari in his individual

capacity. (Document No. 1, pp. 14-15); (Document No. 6, p. 11). The undersigned notes that there is a remaining WDPP claim against Defendant Sorrento.

### C. Violation of The Retaliatory Employment Discrimination Act (Third Cause of Action)

Defendants move to dismiss Plaintiff's claim under North Carolina's Retaliatory Employment Discrimination Act ("REDA"), which provides in part:

> No person shall discriminate or take any retaliatory action against an employee because the employee in good faith does or threatens to ... [f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, ... with respect to ... Chapter 97 of the General Statutes.

N.C. Gen. Stat. § 95-241(a).

To establish a prima facie case of retaliation, Plaintiff must allege: "(1) that [she] exercised [her] rights as listed under N.C. Gen. Stat. § 95-241(a), (2) that [she] suffered an adverse employment action, and (3) that the alleged retaliatory action was taken *because* [she] exercised [her] rights under N.C. Gen. Stat. § 95-241(a)." Wiley v. United Parcel Serv., Inc., 164 N.C. App. 183, 186 (2004) (emphasis added).

Defendants move to dismiss Plaintiff's REDA claim against both Defendants, arguing Plaintiff has failed to satisfy both the first and third elements. (Document No. 4-1, pp. 10, 12). Defendants first argue that "Plaintiff's Complaint fails to establish that she exercised her rights with regard to the North Carolina Wage and Hour Act" or the North Carolina Occupational Safety and Health Act ("NC OSHA"). (Document No. 4-1, p. 11). Defendants assert that "REDA does not protect employees when they make only internal complaints to the employer rather than to some external authority." Id. (citing Pierce v. Atlantic Group, Inc., 219 N.C. App. 19 (2012)).

Defendants contend that "there are no allegations that Plaintiff ever reported any behavior that violated North Carolina Wage & Hour Act to Defendant Sorrento or anyone else. In fact, Plaintiff's Complaint explicitly acknowledges that she left the restaurant without speaking to

14

Defendant Mari about purported pay-related issues on December 17, 2023." (Document No. 4-1, p. 11) (citing Document No. 1, pp. 9, 11).

Defendants also argue that because Plaintiff does not allege reporting concerns about NC OSHA violations *externally*, she fails to establish that she exercised her rights with regard to NC OSHA. (Document No. 4-11, pp. 11-12). Defendants assert that "merely talking to an internal supervisor about potential safety concerns is not a 'protected activity' under REDA." Id. (citing Jurrissen v. Keystone Foods, LLC, 2008 WL 3925086, at *15-16 (M.D.N.C. Aug. 20, 2008); Delon v. McLaurin Parking Co., 367 F. Supp. 2d 893, 902 (M.D.N.C. 2005), aff'd, 146 Fed. App'x 655 (4th Cir. 2005); Cromer v. Perdue Farms, Inc., 900 F. Supp. 795, 801 n.6 (M.D.N.C. 1994), aff'd, 65 F.3d 166 (4th Cir. 1995); Pierce, 219 N.C. App. at 27)).

Defendants further argue that "[e]ven if Plaintiff could establish that her internal report constituted a protected activity under N.C. Gen. Stat. § 95-241(a), she fails to plead any factual allegations to support that she was terminated because of her report." (Document No. 4-1, p. 12). Defendants contend "the last conduct alleged in Plaintiff's Complaint that hypothetically could qualify as protected activity was 'asking Ladonea for help' in March of 2023," nine months before Plaintiff's termination. Id. at p. 13 (citing Document No. 1, p. 9). Defendant thus argues that Plaintiff's allegations do not "support an inference of causation based on a close temporal proximity." (Document No. 4-1, pp. 12-13) (citing Roberson v. Paul Smith, Inc., 2011 WL 683900, at *8 (E.D.N.C. Feb. 18, 2011)).

Defendants also assert that Plaintiff has failed to demonstrate that "retaliatory motive was a substantial factor" in her termination. (Document No. 4-1, p. 13) (citing Wiley v. United Parcel Serv., Inc., 102 F. Supp. 2d 643, 650 (M.D.N.C. 1999), aff'd on other grounds, 11 Fed. App'x 176 (4th Cir. 2001)). Defendants contend Plaintiff's Complaint has no "allegations that Defendants

were motivated to terminate her as a result of her report to Mr. Ladonea or any other colorable protected activity." Id. (citing Smith v. Comput. Task Grp., Inc., 568 F.Supp.2d 603, 613 (M.D.N.C. 2008)).

In response, Plaintiff argues that she has sufficiently stated a REDA claim because she "was investigating ongoing workplace safety hazards under [NC OSHA]." (Document No. 6, p. 12). Plaintiff asserts that "Defendants' argument would mislead one to mistakenly believe that internal complaints are never protected under REDA and that Plaintiff Muja's verbal complaint to co-owner Ladonea nine months before her termination was the only protected activity in which she engaged." Id. at p. 13. Plaintiff quotes a Fourth Circuit Court of Appeals opinion, asserting:

> [I]nternal complaints alleging ongoing NC OSHA violations, like the ones in Bigelow and Jurrissen (and unlike the one in Pierce, where the plaintiff proposed a way to comply with new safety rules but didn't allege any ongoing violations), can be protected. In assessing whether a particular complaint is protected, we should also consider: whether it relates or leads to an investigation, see Pierce, 724 S.E.2d at 575; whether it's made to someone other than the plaintiff's "supervisors or managers," see id.; and whether workplace safety is a primary focus of the complaint, see Delon, 367 F. Supp. 2d at 902.

(Document No. 6, p. 13) (quoting Driskell v. Summit Contracting Grp., Inc., 828 F. App'x 858, 867 (4th Cir. 2020)) (internal citations omitted).

Plaintiff contends that not only did she complain "not to a mere supervisor or manager, but to co-owner Ladonea" multiple times, but she also began an investigation into "workplace hazards involving Defendant Mari" at Ladonea's direction. (Document No. 6, p. 14) (citing Document No. 1, pp. 7-10). Plaintiff asserts that she video recorded the "angry confrontation" between Defendant Mari and a "young female employee" as part of that investigation, and "[t]he next day, Defendant Mari saw the video and terminated Plaintiff Muja on the spot for making it." (Document No. 6, p. 14) (citing Document No. 1, p. 10). Plaintiff argues "[i]t was evident, based

on the nearly contemporaneous temporal proximity of Defendant Mari watching the evidence she had collected and terminating her, that Defendants' termination of Plaintiff Muja was unlawful retaliation based on her NC OSHA investigation in violation of REDA." Id.

Defendants reply that because Plaintiff did not use the recording to lodge a complaint, taking the video was not protected under REDA, and therefore, the close temporal proximity to Plaintiff's termination is irrelevant. (Document No. 9, p. 8).

The undersigned finds Plaintiff's arguments most persuasive. Plaintiff alleges complaining to co-owner Ladonea about workplace hazards and conducting an investigation into potential NC OSHA violations, including taking a video the day before her termination, and these activities are plausibly protected under REDA given the considerations outlined in Driskell. See Driskell, 828 Fed. App'x at 867. The undersigned will therefore respectfully recommend that Plaintiff's claim for violation of REDA be allowed to proceed against both Defendants.

### D. Civil Assault and Battery (Fourth and Fifth Causes of Action)

Defendants move to dismiss Plaintiff's claims for civil assault and battery against Defendant Sorrento, arguing that the requirements for vicarious liability for an employee's intentional torts are not met. (Document No. 4-1, p. 14). The Court would observe that the Complaint contains no claims for civil assault and battery against Defendant Sorrento. See (Document No. 1, p. 16). Defendants seem to misread the text of the Complaint, which clearly states as follows:

> 23. **Defendant Mari**, by an intentional act and display of force and violence, specifically brandishing a knife in Plaintiff Muja's face, threatened her with imminent bodily injury.

> 24. By doing so, **Defendant Mari** caused Plaintiff Muja to have reasonable apprehension that harmful and offensive contact with Plaintiff Muja's body was imminent, especially in light of

**Defendant Mari's** volatile personality and past physical assaults on Plaintiff Muja.

> 25. Plaintiff Muja has suffered, and continues to suffer, damages as a result of **Defendant Mari's** assault.
>
> …
>
> 27. **Defendant Mari** intentionally caused bodily contact with Plaintiff Muja through slapping her, pushing her, and pulling her hair.
>
> 28. By doing so, **Defendant Mari** offended Plaintiff Muja's reasonable sense of personal dignity and caused her physical pain.
>
> 29. **Defendant Mari** perpetrated said bodily contact without Plaintiff Muja's consent.
>
> 30. Plaintiff Muja has suffered, and continues to suffer, damages as a result of **Defendant Mari's** repeated batteries.

(Document No. 1, p. 16) (emphasis added).

Because Plaintiff did not bring civil assault and battery claims against Defendant Sorrento, the undersigned will respectfully recommend that Defendants' motion to dismiss civil assault and battery claims against Defendant Sorrento be denied as moot.

### E. Negligence (Ninth Cause of Action)

Defendants move to dismiss Plaintiff's claim for negligence against both Defendants, arguing "[a]n employee's remedies for injuries sustained in the course of employment attributable to the negligence of an employer, a co-employee, or a supervisor, are limited to those expressly provided by the Workers' Compensation Act." (Document No. 4-1, p. 15) (citing N.C. GEN. STAT. §§ 97-9, 97-10.1 (2017)). Defendants contend Plaintiff's allegations do not meet the requirements for the "narrow exception to the exclusivity provision of the Workers' Compensation Act." (Document No. 4-1, pp. 15-16).

In response, Plaintiff argues that "Defendants' overstatement of the breadth of the Workers' Compensation Act and omission of the proper legal test led to the wrong conclusion." (Document No. 6, p. 15). Plaintiff asserts that "[i]n North Carolina, courts apply the 'applicability test' to determine whether an injury falls under the exclusivity provision of the Workers' Compensation Act." Id. (citing Marlow v. TCS Designs, Inc., 288 N.C. App. 567, 570 (2023)). Plaintiff contends: "Under the applicability test, to fall within the Act, an injury must (1) be caused by an accident, (2) occur in the course of employment, and (3) arise out of the employment." (Document No. 6, pp. 15-16) (citing Marlow, 288 N.C. App. at 570) (emphasis in original).

Plaintiff asserts that the first element of the applicability test is not met here because "[w]hile the stated claim is negligence, the appropriate legal analysis examines the underlying actions of sexual harassment, assault, and battery." Id. (citing Alderete v. Sunbelt Furniture Xpress, Inc., 901 S.E.2d 865, 869 (N.C. Ct. App. 2024)). Plaintiff argues that because assault, battery, and sexual harassment are intentional torts, "Defendants' actions were not accidental." Id.

Plaintiff also asserts that the third element is not met because "Defendants' actions did not arise out of Plaintiff's employment." (Document No. 6, p. 16). Plaintiff contends "intentional tortious acts are rarely considered to be within the scope of an employee's employment." Id. (first citing (Document No. 4-1, p. 14); then quoting Medlin v. Bass, 327 N.C. 587, 594 (1990)). Therefore, Plaintiff argues, "Defendants' 'egregious' conduct falls outside of the Workers' Compensation Act," and Defendants have failed to prove that the Industrial Commission has jurisdiction over Plaintiff's negligence claim. (Document No. 6, p. 16).

In their Reply, Defendants argue that "Plaintiff's Opposition mischaracterizes her own Complaint by focusing her opposition on Defendant Mari's alleged conduct." (Document No. 9, p. 9) (citing Document No. 6, p. 16). Defendants assert "[t]his is simply not what was alleged in

the ninth cause of action in Plaintiff's Complaint," arguing that Plaintiff instead alleges "Defendants breached their duty to respond appropriately to remove known safety hazards in the workplace and to promptly and equitably respond to complaints and reports of sex discrimination (including sexual harassment)." (Document No. 9, p. 9) (citing Document No. 1, p. 19).

Defendants assert that "[i]n a nearly identical claim, the North Carolina Court of Appeals in Shaw v. Goodyear Tire & Rubber Co., 737 S.E.2d 168 (N.C. Ct. App. 2013), concluded that a negligence[-]based claim for an employer's mishandling of a sexual harassment complaint fell within the [Workers' Compensation Act's] reach." (Document No. 9, p. 10). Defendants also assert that "in Baldwin v. Tradesmen Int'l, Inc., [2013 WL 119234], (E.D.N.C. Mar. 22, 2013), the court concluded that plaintiff's negligence claim based on the defendant's failure to exercise reasonable care in addressing harassment falls within the scope of the North Carolina Workers' Compensation Act." Id. Defendants argue this Court should "likewise find that Plaintiff's negligence claim falls within the exclusivity of the Workers' Compensation Act." (Document No. 9, p. 10).

The undersigned finds Plaintiff's argument persuasive with respect to the third element of the applicability test in particular. When an employer is subject to the Workers' Compensation Act, "the Industrial Commission only has exclusive jurisdiction over injuries that 'arise out of and in the course of the employment,' not *all* workplace injuries." Alderete v. Sunbelt Furniture Xpress, Inc., 294 N.C. App. 1, 5 (2024) (affirming denial of an employer's motion to dismiss because plaintiff's injury resulting from co-worker's sexual assault "did not *arise* out of plaintiff's employment under the third prong of the applicability test") (emphasis in original).

Alderete indicates that with a negligence cause of action against an employer, courts should examine "the injury giving rise to the cause of action" when applying the applicability test. See

id. Although Plaintiff's negligence claim is broadly phrased with respect to the underlying injuries, it incorporates allegations related to assault, battery, and sexual harassment. The undersigned observes:

> In North Carolina, courts have consistently held that an intentional assault in the [workplace] by a fellow employee or third party is an accident that occurs in the course of employment, but does not arise out of the employment unless a job-related motivation or some other causal relation between the job and the assault exists.

Marlow v. TCS Designs, Inc., 288 N.C. App. 567, 573 (2023) (quoting Wake Cnty. Hosp. Sys. v. Safety Nat'l Cas. Corp., 127 N.C. App. 33 (1997)).

Moreover, "when an intentional tortious act such as an assault occurs at the workplace but 'the assault was not for the purpose of doing anything related to the duties of the employee, but was for some undisclosed, personal motive[,] [i]t cannot, therefore, be deemed an act of [the] employer.'" Alderete, 901 S.E.2d at 871 (quoting Medlin v. Bass 327 N.C. 587, 594 (1990)).

It appears that Plaintiff has alleged injuries underlying her negligence claim that did not "arise out of" her employment for purposes of the third element of the applicability test, and her negligence claim may thus fall at least in part outside the exclusive jurisdiction of the Workers' Compensation Act. Observing no other arguments in support of dismissing Plaintiff's negligence claim against both Defendants, the undersigned will respectfully recommend that this claim be permitted to proceed to discovery.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that Defendants' "Motion to Dismiss" (Document No. 4) be **DENIED** with respect to Plaintiff's Title VII claim against both Defendants, Plaintiff's Retaliatory Employment Discrimination Act claim against both Defendants, and Plaintiff's negligence claim against both Defendants; and **DENIED**

**AS MOOT** with respect to any claim of wrongful discharge in violation of public policy against Defendant Mari and any claims of civil assault and battery against Defendant Sorrento.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: August 13, 2025

David C. Keesler
United States Magistrate Judge