## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## Civil Action No. 5:24-CV-221-KDB-DCK

| | |
|---|---|
| **Adriana Muja** | |
| **Plaintiff,** | |
| **v.** | **Answer of Defendant Antonio Mari** |
| **Sorrento, LLC d/b/a Sorrento's Italian Restaurant & Pizzeria, and Antonio Mari (individually)** | |
| **Defendants.** | |

### Defendant Antonio Mari's Answer to Complaint

Defendant Antonio Mari ("Mari") (hereafter collectively "Defendant Mari") responds to and defends in response to Plaintiff's Complaint as follows:

### First Defense

Defendant denies each and every allegation contained in the Complaint except as hereinafter may be expressly admitted or otherwise responded to by this Answer.

### Parties

1.      Plaintiff Adriana Muja is an adult at least 18 years old, and a citizen and resident of Iredell County, North Carolina.  At all times relevant, Plaintiff Muja was employed at-will as a manager by Defendant Sorrento's in Iredell County, North Carolina, where she worked and was supervised by Defendant Antonio Mari from about June 20, 2021, until her termination on or about

December 18, 2023. Plaintiff Muja was, at all times relevant, employed by Defendant Sorrento, LLC, d/b/a Sorrento's Italian Restaurant & Pizzeria ("Sorrento's") within the meaning of applicable federal and state laws.

**It is admitted that Plaintiff Muja was employed by Defendant Sorrento's from about June 20, 2021 until her termination in December of 2023. Defendant Mari lacks sufficient knowledge or information to confirm or deny the remaining allegations contained in this Paragraph and thus denies the same.**

2.      Defendant Sorrento's is a private limited liability company incorporated in North Carolina with its principal place of business in Iredell County, North Carolina. At all times relevant, Defendant Sorrento's was an employer, as defined by applicable federal and state laws, which employed 15 or more employees.

**Admitted.**

3.      Defendant Antonio Mari is an adult at least 18 years old and, upon information and belief, a citizen and resident of Iredell County, North Carolina. At all times relevant, Defendant Mari was and is a co-owner of Defendant Sorrento's. Defendant Mari was also, at all times relevant, Plaintiff Muja's supervisor.

**Admitted.**

4. At all times relevant, Defendant Mari and Antonio P. Ladonea were and are the only co-owners of Defendant Sorrento's, and they exercised full and actual control over all aspects of its operations.

**Admitted.**

## Jurisdiction and Venue

5. This Complaint arises under, *inter alia*, 42 USC §§ 2000e - 2000e17 (Title VII of the Civil Rights Act of 1964, as amended), which prohibits discrimination on the basis of sex, including sexual harassment. Accordingly, this Court has original subject matter jurisdiction pursuant to 28 USC § 1331 (relating to federal question jurisdiction) and 28 USC § 1333(a)(3) (relating to equal rights actions).

**The allegations contained in this paragraph constitute a jurisdictional statement to which no response is required. To the extent a response is required, while it is denied that Defendant Mari violated any laws. Defendant Mari admits that Plaintiff invoked the jurisdiction of the Western District of North Carolina pursuant to 28 USC § 1131 and 28 USC § 1333(a)(3).**

6. To the extent that any claims set forth herein are not wholly within the subject matter jurisdiction of this Court pursuant to 42 USC §§ 2000e - 2000e17, this Court has supplemental jurisdiction over the remaining state court claims pursuant to 28 USC § 1367.

**The allegations contained in this paragraph constitute a jurisdictional statement to which no response is required. To the extent a response is required, while it is denied that**

Defendant Mari violated any laws. Defendant Mari admits that Plaintiff invoked the jurisdiction of the Western District of North Carolina pursuant to 28 USC § 1367.

7.     Venue is proper in this District pursuant to 28 USC § 1391 inasmuch as Defendant is a corporation subject to personal jurisdiction in this District. Further, the facts supporting the claims in this Complaint occurred in this District.

**The allegations contained in this paragraph constitute a statement of venue to which no response is required. To the extent a response is required, while it is denied that Defendant Mari violated any laws, Defendant Mari admits that Defendant Sorrento's maintains a place of business in Iredell County, North Carolina, where Plaintiff was employed, and that Plaintiff has invoked venue of the Western District of North Carolina pursuant to 28 USC § 1391.**

8.     Joinder of claims is permitted under Rule 18 of the Federal Rules of Civil Procedure ("FRCP"). Joinder of parties is appropriate under Rule 19 or 20 of the FRCP.

**This Paragraph contains a statement of Federal Rules of Civil Procedure constituting a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies that he has engaged in any acts or omissions that caused damages to Plaintiff and therefore Defendant Mari denies the allegations contained in this paragraph.**

9.      All prerequisite conditions for jurisdiction under 42 USC §§ 2000e - 2000e17 and NCGS § 95-243 have been met, as further detailed in the facts section below.

**The allegations contained in this paragraph constitute a jurisdictional statement to which no response is required.  To the extent a response is required, Defendant Mari denies that he violated 42 U.S.C. §§ 200e – 2000 e17.**

## Facts

10.     On or about June 20, 2021, Plaintiff Muja was hired by Defendant Sorrento's in Statesville, Iredell County, North Carolina where she was employed as a full-time manager at all times relevant to this Complaint.

**Defendant Mari admits that Plaintiff Muja was hired in June of 2021.  The remaining allegations in this paragraph are denied.**

11.     Plaintiff Muja routinely worked in excess of 40 hours per week and was an exemplary employee for Defendants.

**Denied.**

12.     Within a couple months of being hired, Defendant Antonio Mari and Erik Chicas, a manager at Sorrento's, engaged in a relentless campaign of sexual harassment against Plaintiff Muja.

**Denied.**

13.     Defendant Mari and Erik Chicas made repeated degrading sexual comments directed at Plaintiff Muja.  Comments included, "Oh, you look so sexy in black and heels", "Oh my god, you look so sexy", "Just give me one B.J. (referring to a blow-job, or oral sex).  I will pay", and many other similarly-degrading sexual comments.

**Denied.**

14.     Defendant Mari and manager Erik Chicas routinely called Plaintiff Muja by derogatory sexual terms, such as "Bitch" and "Cunt."

**Denied.**

15.     On multiple occasions, Defendant Mari offered Plaintiff Muja money for sex.  At first, oral sex.  Later, sex.

**Denied.**

16.     Defendant Mari and Erik Chicas regularly discussed sexual topics (including sexual history), made sexually-charged statements, and asked probing sexual questions in the presence of, and involving, Plaintiff Muja.

**Denied.**

17.     Upon information and belief, Defendant Mari was, at all times relevant, married. Defendant Mari also knew that Plaintiff Muja was married.

**Defendant Mari denies that he was married at all times relevant, but admits that he became married in December of 2023.  Except as expressly admitted herein, all other allegations in this paragraph are denied.**

18.     Defendant Mari and manager Erik Chicas both repeatedly groped Plaintiff Muja in a sexual manner, including groping her breasts and her butt.

**Denied.**

19.     Chicas repeatedly groped Plaintiff Muja's vagina over her clothing, then smelled his fingers in front of other employees.

**Denied.**

20.     Defendant Mari and manager Erik Chicas knew about, encouraged and enabled each other's sexual harassment toward multiple female employees, including Plaintiff Muja. Defendant Mari and co-owner Antonio Ladonea knew about, but did nothing to stop, harassment.

**Denied.**

21.     Plaintiff Muja never consented to Defendant Mari or manager Erik Chicas' sexual harassment, nor did Plaintiff Muja say or do anything to imply consent.  Plaintiff Muja expressed her disgust with their behavior on multiple occasions, and she never expressed approval or tolerance.

**Defendant Mari denies engaging in any sexual harassment.  Except as expressly admitted herein, all other allegations in this paragraph are denied.**

22.     Plaintiff Muja clearly and directly informed Defendant Mari and manager Erik Chicas that their behavior was inappropriate and unwelcome, instructing them to stop.

**Denied.**

23.     On one occasion, in response to Defendant Mari offering Plaintiff Muja money for sex, Plaintiff Muja stated, "No, I am not a prostitute!"

**Denied**.

24.     Despite Plaintiff Muja's refusals and requests to stop, Defendant Mari and manager Erik Chicas continued their sexual harassment unabated.

**Denied.**

25.     Defendant Mari seemed to harbor resentment toward Plaintiff Muja for not acceding to Defendant Mari's sexual advances and requests for sexual favors.

**Denied.**

26.     When Plaintiff Muja mentioned Defendant Mari and manager Erik Chicas' sexual harassment to a co-worker, whose name will remain private in this Complaint for her protection, the co-worker informed Plaintiff Muja that Defendant Mari and manager Erik Chicas' sexual harassment was ubiquitous, negatively affecting multiple female employees of Defendant Sorrento's.  Some learn to tolerate it; others cannot and quit.

**Defendant Mari denies engaging in any sexual harassment.  Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

27.     Upon information and belief, Defendant Mari solicited sexual activity and sexual photos from multiple female employees of Defendant Sorrento's in exchange for money, gifts (including paying for female employees to get manicures and pedicures), and favoritism.  The sex often occurred in the restaurant.

**Denied.**

28.     Upon information and belief, Defendant Mari has spent thousands of dollars on the solicitation activities described in the above paragraph.

**Denied.**

29.     Upon information and belief, Defendant Mari bought a female employee of Defendant Sorrento's named K.M. a Honda Accord Sport in exchange for sex. When K.M. informed Defendant Mari that she was no longer interested in having sex with him, Defendant Mari went "psycho" and threatened to terminate her unless she returned the car.

**Denied.**


30.     Upon information and belief, Defendant Mari offered an immigration work visa sponsored by Defendant Sorrento's to a female employee named E.V. if she had sex with him.

**Denied.**


31.     Defendant Mari offered Plaintiff Muja's sister, N.M., a place to live and a car in exchange for sex, cooking, and cleaning.

**Denied.**


32.     Defendant Mari once attempted to pay Plaintiff Muja to recruit young, attractive female employees in hopes they might have sex with Defendant Mari. Plaintiff Muja adamantly refused, thinking Defendant Mari's request was disgusting and possibly sex trafficking.

**Denied.**


33.     Upon information and belief, Erik Chicas recruited young, attractive female employees and prospective employees for Defendant Mari.

**Denied.**

34.     On one occasion, Plaintiff Muja heard Defendant Mari express an interest in minor females. Plaintiff Muja formed the impression that Defendant Mari's interest was romantic or sexual in nature, which made Plaintiff Muja very uncomfortable as a mother of five children (including girls). Plaintiff Muja and other employees of Defendant Sorrento's have observed Defendant Mari act in ways toward Defendant Mari's minor step-daughter that made them feel uncomfortable (especially in context of other comments that Defendant Mari made toward his step-daughter in the past).

**Denied.**

35.     In addition to hostile environment sexual harassment, Defendant Mari repeatedly engaged in (and attempted to engage in) *quid pro quo* sexual harassment with female employees at Defendant Sorrento's. Female employees who submit to Defendant Mari's requests for sexual favors received favorable treatment, money, and/or gifts. Those who do not, like Plaintiff Muja, were treated like lowly servants.

**Denied.**

36.     After receiving a complaint about Defendant Mari having sex with a female employee of Defendant Sorrento's in his restaurant-based office, co-owner Ladonea removed the door from Defendant Mari's office in an attempt to prevent it from happening again.

**Denied.**

37. Plaintiff Muja wanted to quit, but she did not think she could find a job that paid as well as her position at Defendant Sorrento's. Plaintiff Muja needed the money to support her family.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

38. In addition to informing Defendant Mari and manager Erik Chicas that their sexual harassment was unwelcome and instructing them to stop, Plaintiff Muja also complained to co-owner Ladonea about the sexual harassment, retaliation, and workplace hazards (including physical and verbal abuse) occurring at Defendant Sorrento's.

**Defendant Mari denies that Plaintiff Muja complained to him. Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph, and thus denies the same.**

39. Upon information and belief, Defendants do not have policy or trainings related to sexual harassment, retaliation, or workplace hazards.

**Denied.**

40. In response to Plaintiff Muja's complaint, Ladonea instructed Plaintiff Muja to document the issues. In effect, Ladonea placed the heavy and potentially hazardous burden of investigation on the complainant, Plaintiff Muja.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

41.     Ladonea told Plaintiff Muja that she could take whatever action she wanted against Defendant Mari, but specifically instructed Plaintiff Muja to not do anything that might hurt the restaurant (i.e., Ladonea's investment).

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

42.     Ladonea cautioned Plaintiff Muja to "be careful" when investigating Defendant Mari and/or taking any action against Defendant Mari.  Plaintiff Muja understood Ladonea's "word of caution" to mean that Defendant Mari was dangerous and may do something to harm Plaintiff Muja or her family.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

43.     Plaintiff Muja had heard from co-workers that Defendant Mari was part of organized crime and was dangerous.  Plaintiff Muja's family also warned her about volatile people like Defendant Mari, who do whatever they want and then bribe their way out of the consequences.

**Defendant Mari denies that he is part of organized crime and is dangerous. Defendant Mari denies that he does whatever he wants and bribes his way out of the consequences.  Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph, and thus denies the same.**

44.     For the above reasons, Plaintiff Muja was very afraid of Defendant Mari and experienced significant stress, fear, and anxiety when going to work at Defendant Sorrento's.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph, and thus denies the same.**

45.     Ladonea's response to Plaintiff Muja's complaints of sexual harassment and safety concerns described above did not include any action to stop the sexual harassment or workplace hazards, remedy their effects, or prevent their recurrence.  Rather, Ladonea relied on Plaintiff Muja to stand up for herself and her female co-workers.

**Denied.**

46.     Upon information and belief, Ladonea is afraid of Defendant Mari and does not take effective action to stop Defendant Mari's wrongful conduct described herein.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

47.     Following Plaintiff Muja's complaint to Ladonea, the sexual harassment and workplace hazards continued unabated.

**Denied.**

48.     Upon information and belief, Defendant Sorrento's does not have any policies or procedures for addressing complaints of sexual harassment or workplace safety; Defendant Sorrento's does not conduct sexual harassment training; and Defendant Sorrento's does not inform employees of their civil rights or related reporting options.

**Denied.**


49.     At some point in 2023, when the sexual harassment was intensifying, Plaintiff Muja respectfully raised her concerns with Defendant Mari about the hostile work environment at Defendant Sorrento's. Plaintiff Muja's fear of Defendant Mari made this confrontation a "terrifying" experience for her. Defendant Mari blew up, yelling loudly at Plaintiff Muja.

**Denied.**


50.     Following Plaintiff Muja's confrontation with Defendant Mari, Defendant Mari began physically assaulting Plaintiff Muja at work. Defendant Mari slapped and pushed Plaintiff Muja, as well as pulled her hair, on multiple occasions at work. Sometimes in conjunction with yelling at her. Defendant Mari made Plaintiff Muja feel like a "worthless object." Defendant Mari acted very "hateful" toward Plaintiff Muja (and other female employees who rejected his sexual advances), doing these things even though Plaintiff Muja had done nothing to incite him.

**Denied.**

51. Plaintiff Muja believed Defendants violated the law, including the NC OSH Act. **Defendant Mari denies violating any law, including the NC OSH Act. Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph concerning Plaintiff's belief, and thus denies the same.**

52. As a result of Defendant Mari's physical abuse and sexual harassment, Plaintiff Muja developed a victim-mentality, causing her to incorrectly blame herself and keep returning to Defendant Mari in hopes the situation might improve. **Denied.**

53. In March 2023, Defendant Mari became so enraged that Defendant Mari pulled out a sharp kitchen knife and held it to Plaintiff Muja's face, threatening her. Plaintiff Muja "freaked out" and quickly walked toward the exit door while calling Ladonea for help. Plaintiff Muja had never been so afraid in her life (nor afraid for her life) as she was then. **Denied.**

54. A co-worker, whose name will remain private in this Complaint, witnessed the knife incident and ran after Plaintiff Muja. The co-worker begged Plaintiff Muja to not leave the co-worker alone with Defendant Mari. Plaintiff Muja was afraid for her life and could not stay. **Denied.**

55.     As a result of Defendant Mari threatening Plaintiff Muja with a sharp knife held to her face, Plaintiff Muja developed severe anxiety, fear, and panic attacks.  When the first panic attack occurred, Plaintiff Muja went to the hospital emergency room by ambulance because Plaintiff Muja thought she was having a heart attack.  Plaintiff Muja was experiencing chest pains and shortness of breath.  The hospital admitted Plaintiff Muja, performed multiple tests, and observed her overnight.

**Defendant Mari denies that he threatened Plaintiff Muja with a sharp knife held to her face.  Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in this paragraph, and thus denies the same.**

56.     On or about December 17, 2023, Plaintiff Muja went to the restaurant to speak with Defendant Mari about pay-related issues that Plaintiff Muja had recently discovered. Specifically, Defendant Sorrento's (via Defendant Mari) had been (a) under-reporting Plaintiff Muja's pay on certain occasions; (b) claiming to over-pay Plaintiff Muja on other occasions, thereafter deducting her pay and issuing pay documentation for $0.00; (c) not paying Plaintiff Muja's overtime pay at the increased rate required by the NC Wage & Hour Act; (d) diverting a $7.00 per shift ($14.00 per day) of Plaintiff Muja's pay to bussers without her consent, and (e) not withholding (or paying) taxes as Plaintiff Muja had instructed on her start-of-employment tax forms, resulting in Plaintiff Muja owing money to state and federal tax authorities.  Plaintiff Muja was never informed of any of these issues by any of the Defendants.

**Denied.**

57.     On multiple occasions, Plaintiff Muja received paychecks for $0.00. When Plaintiff Muja asked Defendant Mari for the reason, Defendant Mari responded that Plaintiff Muja had worked too many hours and all of her pay was diverted to pay taxes.

**Denied.**


58.     Upon information and belief, Defendants misappropriated Plaintiff Muja's earned wages and tax withholdings for their personal use and other improper purposes.

**Denied.**


59.     Upon information and belief, "personal use" in the above paragraph likely includes Defendant's Mari's nice home, Porsche, rental properties, luxury personal items, and solicitation of sexual activity and sexual photos (which included employees of Defendant Sorrento's).

**Denied.**


60.     Upon information and belief, Defendants pay more to illegal immigrants who work in the kitchen at Defendant Sorrento's because no taxes are withheld.

**Denied.**

61.     When Plaintiff Muja arrived at the restaurant on or about December 17, 2023, Defendant Mari was in a bad mood. Defendant Mari was having an angry confrontation with a young female waitress, yelling directly in her face. To document evidence of the sexual harassment and physical safety issues, as Ladonea had instructed her to do, Plaintiff Muja began video-recording the incident on her cell phone. The video captured Defendant Mari screaming at the young female waitress, cursing, and waiving his hands. At the end, Defendant Mari yelled at the waitress, "Get the fuck out!"

**Defendant Mari admits that he was addressing performance issues with a female server on or about December 17, 2023. Except as expressly admitted herein, Defendant Mari lacks sufficient knowledge or information to form a belief as to the allegations in this paragraph, and thus denies the same.**

62.     Defendant Mari's wife was standing near Plaintiff Muja when the incident in the above paragraph. Plaintiff Muja asked the wife whether she was going to let Defendant Mari act that way. Defendant Mari's wife responded in Spanish, yes, because she (the wife) did not want to die. Plaintiff Muja suddenly became terrified at the thought of talking to Defendant Mari. Plaintiff Muja started having another panic attack and left. Plaintiff Muja went to her car without talking with Defendant Mari that day.

**Denied.**

63. The next day, on or about December 18, 2023, Plaintiff Muja went to work. As soon as Plaintiff Muja arrived, Defendant Mari was standing in the restaurant waiting for her. Defendant Mari promptly demanded to know whether Plaintiff Muja had video-recorded the previous day's incident. Scared, Plaintiff Muja admitted to doing so. Defendant Mari promptly demanded that Plaintiff Muja send him the video-recording. Not wanting to anger Defendant Mari further, Plaintiff Muja did as she Defendant Mari instructed.

**Denied.**

64. Defendant Mari watched the video-recording in Plaintiff Muja's presence. Defendant Mari grew red in the face, then stared angrily at Plaintiff Muja for a moment. Defendant Mari suddenly burst, "Get the fuck out of my restaurant!"

**Denied.**

65. Plaintiff Muja responded that Defendant Mari could not fire her for taking a video. Defendant Mari stated, "This is my restaurant. I do what the fuck I want."

**Denied.**

66. Defendant Mari terminated Plaintiff Muja from Defendant Sorrento's on or about December 18, 2023.

**Admitted.**

67. As a result of Defendants' wrongful conduct, Plaintiff Muja has suffered serious, debilitating, and irreparable physical, mental, and emotional harm.

**Denied.**


68. Plaintiff Muja was a healthy person before working for Defendants. However, due to Defendants actions described above, Plaintiff Muja has experienced significant stress, tension, fear, nervousness, and anxiety. Plaintiff Muja has difficulty sleeping, leaving her fatigued and depressed. Plaintiff Muja experiences regular panic attacks, seizures, night terrors, insomnia, and other stress-induced conditions. Plaintiff Muja developed a severe vaginal bleeding condition, which causes a heavy period flow that lasts approximately 16-20 days per month. Plaintiff Muja has lost more than 100 pounds. She has experienced hair loss and memory loss unusual for her age. Plaintiff Muja feels like a completely different person after working for Defendants, a figment of her former self. Plaintiff Muja feels like a "zombie" most days, unable to leave her bed or her couch. She has difficulty emerging from chronic depression to interact with family and friends. Plaintiff Muja has been diagnosed with post-traumatic stress disorder. She has been admitted to the hospital multiple times for serious or combined symptoms.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

69.     Despite diligently trying to find another job to support her family, Plaintiff Muja has been unable to hold work. One employer terminated her soon after hire for the health-related conditions and symptoms described above, telling her to come back when her health improved.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

70.     Plaintiff Muja did not experience any of the health-related conditions and symptoms described above until the sexual harassment and workplace hazards caused by the Defendants.

**Denied.**

71.     The Defendants further caused significant stress within Plaintiff Muja's family, which has taken a significant negative toll on her husband and five young children.

**Denied**.

72.     Plaintiff Muja has further experienced significant financial stress as a result of Defendants' actions, including loss of work-related pay and expensive medical bills.

**Defendant Mari lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in this paragraph, and thus denies the same.**

73. Plaintiff Muja timely filed her claims with the NCDOL for sex discrimination (sexual harassment), retaliation, workplace hazards, and wage and tax issues. Upon Plaintiff Muja's request, the NCDOL sent Plaintiff Muja a right-to-sue letter, dated July 17, 2024. This Complaint was filed in a timely manner, within 90 days of the NCDOL's right-to-sue letter.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, however, Defendant Mari admits that Plaintiff's filings were timely.**

74. Plaintiff Muja timely failed her sex discrimination (sexual harassment) claim with the US EEOC. Plaintiff Muja received a right-to-sue letter, dated October 7, 2024. This Complaint was filed in a timely manner, within 90 days of the EEOC's right-to-sue letter, and is attached to this Complaint.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, however, Defendant Mari admits that Plaintiff's filings were timely.**

### First Cause of Action
### Sexual Harassment

1. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

2. The work environment at Defendant Sorrento's was objectively and subjectively offensive, and Plaintiff Muja was so offended.

**Denied.**

3. Defendants' harassing conduct was directed at Plaintiff Muja and was unwelcome, and Plaintiff Muja informed Defendants and co-owner Antonio Ladonea accordingly.

**Denied.**

4. Defendants' harassing conduct was based on sex.

**Denied.**

5. Defendants' harassing conduct was severe and pervasive.
**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

6. Defendant Mari conditioned terms, conditions, and privileges of employment on Plaintiff Muja and other employees' acceptance of his sexual advances, which Plaintiff Muja rejected.

**Denied.**

7.     Plaintiff Muja has suffered, and continues to suffer, damages as a proximate result of Defendants' sexual harassment.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

8.     There is a basis for employer and owner liability. Specifically, in addition to not likely having a sexual harassment policy, Plaintiff Muja complained of sexual harassment to Defendants and co-owner Antonio Ladonea who did not take sufficient action to stop the sexual harassment, remedy its effects, or prevent its recurrence. Rather, co-owner Antonio Ladonea instructed Plaintiff Muja to investigate her own sexual harassment complaint (among her other complaints), which caused her to experience significant harm and be terminated by Defendant Mari. Moreover, harasser Erik Chicas was, at all times relevant, a supervisor. Defendant Mari and co-owner Antonio Ladonea were, at all times relevant, alter-egos or proxies for Sorrento's.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

## Second Cause of Action
## Wrongful Discharge in Violation of Public Policy
## (WDPP)

9.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

10.     Plaintiff Muja was, at all times relevant, an at-will employee of Defendants.

**Admitted.**


11.     Plaintiff Muja and other female waitresses at Defendant Sorrento's were routinely subjected to workplace hazards that were causing or were likely to cause serious injury or serious physical harm.  Such workplace hazards included, but were not limited to, physical assault and battery, verbal abuse (including threats, insults, yelling, and cursing), threat with a deadly weapon, sexual harassment (including sexual assault), and a general hostile and abusive work environment. Defendants knew of these serious workplace hazards and failed to take prompt effective remedial action.

**Denied.**


12.     Plaintiff Muja was engaged in legally-protected activity when she refused to accede to Defendant Mari's unwelcome and inappropriate sexual advances and requests for sexual favors, which are prohibited by NCGS § 143-422 (NC Equal Employment Practices Act); when she complained of sex discrimination and sexual harassment, which are prohibited by the NC Equal Employment Practices Act; when she video-recorded and complained about workplace hazards under NCGS § 95-129(1) (NC Occupational Safety & Health Act); when she investigated sexual harassment and workplace hazards at Defendant Sorrento's, in accordance with the law and as directed by Ladonea; when she objected to wage and tax issues that she believed violated NCGS § 95-25.1 *et seq.* (NC Wage & Hour Act) and other tax laws; and when she exercised her rights under NCGS § 95-241(a) (NC Retaliatory Employment Discrimination Act).

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

13. Plaintiff Muja was wrongfully discharged from her employment at Defendant Sorrento's by co-owner Defendant Mari. Upon information and belief, co-owner Ladonea also became aware of the wrongful termination and took no remedial action.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

14. Plaintiff Muja was discharged because of her engagement in one or more of the above legally-protected activities, each of which was a substantial factor in her termination.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

15. Plaintiff Muja has suffered, and continues to suffer, damages as a proximate result of Defendants' wrongful discharge of her employment.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

**Third Cause of Action**
**Violation of the Retaliatory Employment Discrimination Act**
**(REDA)**

16.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**


17.     Plaintiff Muja was exercising her rights under NCGS § 95-241(a) (REDA) when she complained of, and was investigating, Defendants' behavior that violated the NC Wage & Hour Act and the NC Occupational Safety & Health Act.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**


18.     Plaintiff Muja suffered adverse action, including termination.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**


19.     Defendants willfully took adverse action against Plaintiff Muja, including terminating her, for exercising her rights under REDA.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

20. Plaintiff Muja has suffered, and continues to suffer, damages as a proximate result of Defendants' adverse action(s) against her.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

21. There was no legitimate cause for the adverse action(s) against Plaintiff Muja.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

### Fourth Cause of Action
### Civil Assault

22. The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

23. Defendant Mari, by an intentional act and display of force and violence, specifically brandishing a knife in Plaintiff Muja's face, threatened her with imminent bodily injury.

**Denied.**

24.     By doing so, Defendant Mari caused Plaintiff Muja to have reasonable apprehension that harmful and offensive contact with Plaintiff Muja's body was imminent, especially in light of Defendant Mari's volatile personality and past physical assaults on Plaintiff Muja.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

25.     Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendant Mari's assault.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

<u>**Fifth Cause of Action**</u>
<u>**Civil Battery**</u>

26.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

27.     Defendant Mari intentionally caused bodily contact with Plaintiff Muja through slapping her, pushing her, and pulling her hair.

**Denied.**

28.     By doing so, Defendant Mari offended Plaintiff Muja's reasonable sense of personal dignity and caused her physical pain.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

29.     Defendant Mari perpetrated said bodily contact without Plaintiff Muja's consent.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

30.     Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendant Mari's repeated batteries.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

### Sixth Cause of Action
### Intentional or Reckless Infliction of Emotional Distress

31.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

32.     Defendant Mari engaged in willful and wanton conduct that was atrocious and utterly intolerable.  Defendant Mari further engaged in extreme and outrageous conduct toward Plaintiff Muja, exceeding all bounds of decency.

The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.

33. By doing so, Defendant Mari intended to cause severe emotional distress to Plaintiff Muja or recklessly disregarded the likelihood that his acts would cause her severe emotional distress. Defendant Mari further acted with reckless indifference to Plaintiff Muja's statutory right to work in an environment free from sex discrimination (including sexual harassment) and workplace hazards.

The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.

34. Defendant Mari's conduct caused Plaintiff Muja to experience severe emotional distress, which Plaintiff Muja continues to suffer.

The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.

35. Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendant Mari's conduct.

The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.

## Seventh Cause of Action
## Violation of NC Wage & Hour Act

36.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

37.     During the course of Plaintiff Muja's employment, Plaintiff Muja was entitled to her earned standard wages, tips, and overtime in accordance with NCGS § 95-25.1 *et seq.* (NC Wage & Hour Act).

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

38.     Defendants unjustifiably withheld an unknown amount of Plaintiff Muja's earned standard wages, tips, and overtime in violation of the NC Wage & Hour Act.  The exact amount should be calculable if proper record-keeping was kept and will be available for discovery.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

39.     Defendants failed to pay taxes to government authorities based on Plaintiff Muja's declared withholdings on start-of-employment tax documents.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

40.     Defendants failed to provide notice of its wage policies, procedures, rates of pay, withholdings, or other relevant wage and tax practices to Plaintiff Muja, including any changes thereto (whether before or after Defendants' actions).

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

41.     Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendants' conduct.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

<u>**Eighth Cause of Action**</u>
<u>**Civil Conversion**</u>

42.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

43.     Plaintiff Muja earned wages and overtime that Defendants refused to pay her.

**Denied.**

44.     Plaintiff Muja is the rightful owner of said wages and overtime pay.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

45.     Upon information and belief, Defendants converted Plaintiff Muja's property for their own use.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**


46.     As a direct and proximate result of Defendants' conversion of Plaintiff Muja's earned wages and overtime pay, Plaintiff Muja has been damaged.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**


### Ninth Cause of Action
### Negligence

47.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**


48.     Defendants and co-owner Antonio Ladonea knew about all of the above systemic misconduct and wrongdoing occurring at Defendant Sorrento's.

**Denied.**

49.     Defendants had duties to act reasonably to avoid causing harm to others, to comply with applicable laws, to respond appropriately to remove known safety hazards in the workplace, and to promptly and equitably respond to complaints and reports of sex discrimination (including sexual harassment).

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

50.     Defendants and co-owner Antonio Ladonea breached their duties, which breaches were the actual and proximate cause of damages to Plaintiff Muja.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

51.     Plaintiff Muja has suffered, and continues to suffer, damages as a result of Defendants' and co-owner Antonio Ladonea's negligence.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required.  To the extent any response is required, Defendant Mari denies.**

### Tenth Cause of Action
### Punitive Damages

52.     The facts and allegations contained in the above paragraphs of this Complaint are incorporated by reference as if fully set forth herein.

**Defendant Mari realleges and reincorporates by reference all previous responses, answers, and defenses as if fully set forth herein.**

53. Defendants' actions were willful, wanton, intentional, malicious, wrongful, hostile, manipulative, oppressive, and without any justification. Defendants have entirely and blatantly disregarded the law and all bounds of moral decency.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

54. As a result of the nature of Defendants' actions, Plaintiff Muja is entitled to punitive damages, treble damages, and liquidated damages, to the extent permitted by each applicable law, and greater than $25,000.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

55. Punitive damages are necessary to punish Defendants and deter future wrongdoing.

**The allegations contained in this paragraph constitute a legal conclusion to which no response is required. To the extent any response is required, Defendant Mari denies.**

### Additional and Affirmative Defenses

### Second Defense

The Complaint fails to state one or more claims for which relief may be granted under Fed. R. Civ. P. 12(b)(6).

### Third Defense

Plaintiff has failed in whole or in part to mitigate any alleged damages.

## Fourth Defense

Defendant Mari denies any and all allegations made in Plaintiffs' Complaint not specifically admitted or otherwise responded to by this Answer.

## Fifth Defense

Plaintiff has not suffered severe emotional distress. Additionally, Plaintiff has not suffered severe emotional distress attributable to any conduct alleged in her Complaint or any severe emotional distress attributable to any alleged conduct of Defendant Mari.

## Sixth Defense

Plaintiff's assault claim fails because Defendant Mari did not actually put Plaintiff in fear of immediate bodily harm.

## Seventh Defense

Plaintiff's claim for battery fails because Defendant Mari did not make harmful or offensive conduct with Plaintiff's person. To the extent Defendant Mari made any contact with Plaintiff's person, the contact was not sufficiently offensive to constitute a battery.

## Eighth Defense

Plaintiff's alleged employment claims fail because the Complaint lacks any factual allegations that plausibly suggest Defendant Mari committed any tortious activity in North Carolina.

### Ninth Defense

All alleged employment actions regarding Plaintiff were taken, made, and done in good faith, based on legitimate, non-discriminatory or non-retaliatory reasons, and were not based on any illegal criteria.

### Tenth Defense

Plaintiff has been fully compensated for all work performed.

### Eleventh Defense

Defendant Mari has no knowledge of any uncompensated work performed by Plaintiff.

### Twelfth Defense

Defendant Mari is not liable for Plaintiff's alleged damages. In the alternative, any damages are unrecoverable or limited under the 'same decision' doctrine because Defendants would have taken the same actions regardless of Plaintiff's alleged protected conduct or any alleged impermissible motivating factor, including protected traits or activities.

### Thirteenth Defense (After-Acquired Evidence)

Should information be discovered that would have led to termination of Plaintiff, had that information been known to Defendant Mari during Plaintiff's employment, Plaintiff is barred from monetary and equitable relief including recovery of damages for alleged future lost earnings and reinstatement and Defendant Mari has no liability for the claims brought in the Complaint.

## Fourteenth Defense

Defendant Mari was not timely or properly made aware of the alleged harassing and/or extreme and outrageous conduct described in the Complaint.

## Fifteenth Defense

Plaintiff has improperly plead punitive damages as a cause of action and has failed to plead with particularity a basis for punitive damages.

## Sixteenth Defense

To the extent any of Plaintiff's claims fall outside the relevant statutes of limitations, Defendant Mari asserts such statutes of limitations as an absolute defense.

## Seventeenth Defense

Plaintiff has unclean hands.

## Eighteenth Defense

Plaintiff has no legitimate basis for holding Defendant Mari personally liable for any employment actions.

## Twentieth Defense

Defendant Mari's conduct was not severe or pervasive as a matter of law.

## Twenty-First Defense/ Reservation of Defenses

Defendant Mari explicitly reserves his right to amend this Answer and Affirmative Defenses to the extent additional affirmative defenses come to light during discovery and litigation.

## Prayer for Relief

Defendant Mari prays for the following relief:

1.     That the Plaintiff have and recover nothing of Defendant Mari;

2.     That all costs of this action, including Defendant Mari's attorney fees, be charged to Plaintiff as allowed by law or statute or agreement; and

3.     That this Court grant such other and further relief to Defendant Mari as the Court deems just and proper.

Respectfully submitted,

This the 17th day of September, 2025.

### HULL & CHANDLER

s/ Elizabeth Vennum
NC State Bar No. 49747
Hull & Chandler
1009 East Boulevard
Charlotte, North Carolina 28203
Phone: 704-375-8488
Fax: 704-375-8487
lvennum@lawyercarolina.com
*Counsel for Defendant Mari*

Page **41** of **42**

Case 5:24-cv-00221-KDB-DCK     Document 21     Filed 09/17/25     Page 41 of 42

## Certificate of Service

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send notification to the following:

Ian M. McRary
McRary Law, PLLC
231 Government Avenue SW, #1094
Hickory, North Carolina 28603
ian@mcrarylaw.com
*Counsel for Plaintiff*

Jacob J. Modla
Cromer Babb & Porter
115 Elk Avenue
Rock Hill, SC 29730
jake@cromerbabb.com
*Counsel for Plaintiff*

Kevin Parsons
Lewis Brisbois Bisgaard & Smith LLP
521 East Morehead Street, Suite 250
Charlotte, North Carolina 28277
Kevin.Parsons@lewisbrisbois.com
*Counsel for Defendant Sorrento, LLC*

This the 17th day of September, 2025.

/s/ Elizabeth Vennum
Elizabeth Vennum